UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LORI RAFFA MAXWELL AND ANTHONY DELUCCIA *Individually and on Behalf of All Others Similarly Situated*,<br><br>                Plaintiffs,<br><br>    v.<br><br>WILLIAM SARRIS,<br><br>                Defendant. | Case No.: 1:25-cv-5643-LAK<br><br>**ORAL ARGUMENT REQUESTED** |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WILLIAM SARRIS' MOTION TO DISQUALIFY JOHN DEATON AS COUNSEL FOR PLAINTIFFS

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| III. | LEGAL STANDARD | 4 |
| IV. | ARGUMENT | 6 |
| V. | CONCLUSION | 8 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Battagliola v. Nat'l Life Ins. Co.*,
   No. 03-8558, 2005 WL 101353, (S.D.N.Y. Jan. 19, 2005) ......................................................4, 5

*Chinese Auto. Distribs. of Am., LLC v. Bricklin*,
   No. 07-4113, 2009 WL 47337, (S.D.N.Y. Jan. 8, 2009) ............................................................6

*Evans v. Artek Sys. Corp.*,
   715 F.2d 788 (2d Cir. 1983)......................................................................................................4

*Farnham v. State Bar*,
   17 Cal. 3d 605 (1976) ...............................................................................................................7

*Lexjac, LLC v. Beckerman*,
   No. 07-4614, 2008 WL 4936866, (E.D.N.Y. Nov. 14, 2008) ...................................................7

*Piven v. Harwood Feffer LLP*,
   No. 14-6601, 2015 WL 1268002 (S.D.N.Y. Mar. 11, 2015)......................................................7

*United States v. Prevezon Holdings Ltd.*,
   839 F.3d 227 (2d Cir. 2016)...................................................................................................5, 8

*Shen v. Miller*,
   212 Cal. App. 4th 48 (2012) ..................................................................................................6, 7

*Wei Cheng Chang v. Pi*,
   288 A.D.2d 378 (N.Y. App. Div. 2001) ....................................................................................6

**Other Authorities**

New York Rules of Professional Conduct ...................................................................................1, 6

Restatement (Third) of the Law Governing Lawyers § 14 (2000) ..............................................6, 7

I.        **INTRODUCTION**

By filing this action, John Deaton has committed a breach of professional ethics and a betrayal of his attorney-client relationship with the defendant William Sarris. Just four months ago, Mr. Deaton represented Mr. Sarris in connection with a dispute with the current management of Linqto regarding the same regulatory issues alleged in this lawsuit. At that time, Mr. Deaton adopted a view of the issues facing Linqto that is diametrically opposed to his allegations in this case.

Previously, Mr. Deaton portrayed Mr. Sarris as the champion of Linqto's customers who was trying to protect their investments from current management's plan to drive the company into a needless bankruptcy so they could use the resulting confusion and panic to seize customer assets. Mr. Deaton said Linqto's regulatory issues were not a serious threat to its customers. They were an exaggeration by current management to engage in self-dealing at customer expense.

This was the premise of a complaint Mr. Deaton drafted just a few months ago that named Mr. Sarris as a plaintiff in a derivative action against several members of the current Linqto Board. In that draft complaint, Mr. Deaton accused the current Board, including CEO Dan Siciliano, of breaching fiduciary duties to Linqto by "making premature and damaging public announcements regarding regulatory issues." Now it is Mr. Deaton "making premature and damaging public announcements regarding regulatory issues at Linqto," but this time his accusations are directed at his former client, Mr. Sarris.

Mr. Sarris looks forward to the opportunity to defend himself against those baseless accusations and explain how he has been the defender of the interests of Linqto's customers throughout this process. But first Mr. Deaton must be removed from this matter. His about-face is a violation of the New York Rules of Professional Conduct that govern the conduct of all attorneys practicing in this state.[1] Rule 1.9 makes clear that a lawyer cannot be adverse to his former client

---

[1] Mr. Deaton has signed the complaint in this action with the notation "SDNY Bar # 31415," but the undersigned counsel has been unable to locate Mr. Deaton in the public database listing lawyers barred in the state of New York. Regardless of whether Mr. Deaton is admitted to practice in New York, or will need to seek admission *pro hac vice*, the New York Rules of Professional Conduct will govern his conduct. *See* Rule 8.5(b)(1).

1

in a substantially related matter without his former client's written consent. There is no question that Mr. Deaton's current clients in this matter are adverse to Mr. Sarris—they are suing him—and Mr. Sarris certainly did not consent to the representation. There is also no question that a substantial relationship exists between this case and Mr. Deaton's prior representation of Mr. Sarris, as can be seen from the Complaint in this action, Dkt. 1, and the complaint Mr. Deaton drafted for Mr. Sarris a few months ago.[2] In those two complaints, Mr. Deaton proposes two closely related but mutually exclusive interpretations of the issues facing Linqto. *See* Dkt. 1; Heyworth Decl., Ex. A.

Mr. Deaton cannot be permitted to continue as counsel for plaintiffs in these circumstances. He must be disqualified from any further representation of plaintiffs in this action or any substantially related action.

## II.    FACTUAL BACKGROUND

William Sarris is the founder and former CEO of Linqto, a platform that enables investment in private securities. Declaration of William Sarris ("Sarris Decl.") ¶ 1. He retired as CEO of Linqto in January 2025 and was replaced by current CEO Dan Siciliano. *Id*. Following his retirement as CEO, Mr. Sarris has remained a member of Linqto's Board of Directors. *Id.* Since shortly after Mr. Siciliano joined Linqto, he has been engaged in an ongoing dispute with Mr. Sarris and others about the proper management of the Company, including the handling of alleged regulatory violations as well as potential conflicts of interest by Mr. Siciliano and other members of his management team. In February 2025, without Mr. Sarris' prior knowledge, Linqto paused all transactions on the platform, preventing customers from exiting their investments on the platform indefinitely.

John Deaton, counsel for the plaintiffs in this action, is a longtime customer of Linqto who Mr. Sarris has known for some time. *Id.* ¶ 2. Mr. Sarris heard from others that Mr. Deaton was concerned about what was happening at Linqto. *Id.* On or around March 25, 2025, Mr. Sarris

---

[2] *See* Declaration of James Heyworth in support of William Sarris' Motion to Disqualify John Deaton ("Heyworth Decl."), Ex. A.

contacted Mr. Deaton to obtain legal advice regarding current management's handling of the issues facing the Company and spoke with him about these issues several times over the next few days. *Id.* ¶ 3. Mr. Sarris understood that Mr. Deaton was acting as his attorney, regardless of whether they signed a written engagement letter or agreed to the payment of fees. *Id.* ¶ 4. Based on that understanding, Mr. Sarris divulged information that he would not otherwise share without the protection of the attorney-client privilege. *Id*.

In an email on March 27, 2025 to schedule a call with Mr. Deaton, Mr. Sarris labeled the message "privileged and confidential" and noted that he "would like to have a privileged discussion with you later today if you are available." Heyworth Decl., Ex. B. Mr. Sarris then sent Mr. Deaton an invitation for a Zoom meeting with the subject line "PRIVILEGED: Assets protection planning." *Id.*, Ex. C. During these calls, Mr. Deaton suggested to Mr. Sarris that he file a derivative lawsuit in Delaware Chancery Court, with Mr. Sarris as a named plaintiff, along with the two other Linqto directors with whom Mr. Sarris was aligned. Sarris Decl. ¶ 5.

On March 28, Mr. Deaton sent Mr. Sarris the draft complaint, Heyworth Decl., Ex. A, with the cover message: "Bill, here is a draft as requested," *id.*, Ex. D. Mr. Deaton's draft complaint alleged, among other things, that a majority of the Linqto Board breached their fiduciary duties to Linqto by "[m]aking premature and damaging public announcements regarding regulatory issues[.]" Heyworth Decl., Ex. A ¶ 63. Mr. Deaton explained that these "announcements regarding regulatory issues" benefited current management's negotiating position in a potential self-interested transaction with Linqto. *Id.* ¶¶ 25-27. According to Mr. Deaton, Linqto's new CEO "Siciliano has been leading Linqto through a regulatory investigation while, at the same time, negotiating terms for Linqto's acquisition of his own company," which is "a direct competitor of Linqto . . . that has never made a profit and depends on being merged with a profitable platform such as Linqto." *Id*. ¶¶ 25, 27. The complaint also alleged that the defendants "manipulated and abused Board processes to bar non-conflicted Directors from exercising oversight," including by appointing a new Board member while a current Board member who would have blocked the appointment was excluded from the meeting. *Id.* ¶ 49, 52-53. The complaint was never filed, but

3

Mr. Sarris continued discussing these and other legal issues with Mr. Deaton over the weeks that followed, believing at all times that Mr. Deaton was acting as his attorney. Sarris Decl. ¶ 5.

Less than four months later, on July 9, 2025, Mr. Deaton filed this action against Mr. Sarris on behalf of a putative class of Linqto customers. Mr. Deaton's current complaint is based on many of the same issues that he discussed confidentially with Mr. Sarris, and that the complaint Mr. Deaton drafted for Mr. Sarris accused the current Linqto management of exaggerating. Mr. Deaton provided Mr. Sarris with no prior notice of this new representation or the resulting lawsuit. *Id*. ¶ 6.

On July 16, 2025, counsel for Mr. Sarris called Mr. Deaton and pointed out the ethical conflict between this lawsuit and his prior representation of Mr. Sarris. Heyworth Decl. ¶ 6. Mr. Deaton acknowledged that he previously spoke with Mr. Sarris about his dispute with current management at Linqto and recommended that he file a derivative action in Delaware Chancery Court. *Id*. Mr. Deaton took the position that because he never invoiced Mr. Sarris for his work, he never represented Mr. Sarris. *Id*. Mr. Deaton refused to withdraw as counsel in this case.

### III.  LEGAL STANDARD

Whether disqualification is required is determined by the three-factor test established by the Second Circuit in *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983):

(1)  The moving party is a former client of the adverse party's counsel.

(2)  There is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit.

(3)  The attorney whose disqualification is sought had access to, or was likely to have had access to, relevant, privileged information in the course of his prior representation of the client.

"The adjudication of such matters, the Second Circuit has held, requires the district court to resolve 'any doubt[s] . . . in favor of disqualification.'" *Battagliola v. Nat'l Life Ins. Co.*, No. 03-8558, 2005 WL 101353, at *7 (S.D.N.Y. Jan. 19, 2005) (marks and citations omitted).

4

For the second factor of the test, a "'substantial relationship' exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016) (citations omitted). Once a substantial relationship between the cases has been established, and this second part of the test is therefore satisfied, "the movant is not required to make a specific showing that confidences were passed to counsel. Instead, the movant is entitled to the benefit of an irrebuttable presumption that confidences were shared." *Id.* at 240 (marks and citations omitted). The Second Circuit has explained:

> In order to grant a disqualification motion, a court should not require proof that an attorney actually had access to or received privileged information while representing the client in a prior case. Such a requirement would put the former client to the Hobson's choice of either having to disclose his privileged information in order to disqualify his former attorney or having to refrain from the disqualification motion altogether.

*Id.* at 240-41 (citations omitted); *see also Battagliola,* 2005 WL 101353, at *13 ("For the Court to probe further and sift the confidences in fact revealed would require the disclosure of the very matters intended to be protected by the rule.") (citation omitted). Thus, "[t]he substantial relationship test removes the need for courts to make direct inquiry into whether confidential information was actually transmitted." *Prevezon Holdings*, 839 F.3d at 241. The Second Circuit has explained that, after finding a substantial relationship exists:

> The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

*Id.* (quoting *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 570 (2d Cir. 1973) and *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 268-69 (S.D.N.Y. 1953)). Further, the Second Circuit has explained that the underlying concern is not merely disclosure of privilege discussions but the strategic use of insider information:

> Adverse use of confidential information is not limited to disclosure. It includes knowing what to ask for in discovery, which witnesses to seek to depose, what

questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses.

*Id.* at 238 (quoting *Ullrich v. Hearst Corp.*, 809 F. Supp. 229, 236 (S.D.N.Y. 1992)).

The Second Circuit has explained that a protective order to prevent such adverse use is unworkable. *Id.; see also Chinese Auto. Distribs. of Am., LLC v. Bricklin*, No. 07-4113, 2009 WL 47337, at *7 (S.D.N.Y. Jan. 8, 2009) ("That rule . . . is not designed merely to prevent the disclosure of confidences by the lawyer. It concerns itself as much with the lawyer's *use* of confidential information in a manner adverse to the interests of the former client that trusted the lawyer with its confidences.") (emphasis in original) (citations omitted).

## IV.    ARGUMENT

Mr. Deaton should be disqualified from representing the plaintiffs in this action. In violation of Rule 1.9, he is representing clients with interests that are "materially adverse" to those of his former client Mr. Sarris in a matter that is "substantially related" to that former representation.

***First***, Mr. Deaton and Mr. Sarris had an attorney-client relationship. An attorney-client relationship arises whenever "a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person" and "the lawyer manifests to the person consent to do so." Restatement (Third) of the Law Governing Lawyers § 14 (2000). No explicit agreement is required. "The lawyer may . . . indicate consent by action, for example by performing services requested by the client." *Id*. cmt. (e); *Wei Cheng Chang v. Pi*, 288 A.D.2d 378, 380 (N.Y. App. Div. 2001) ("An attorney-client relationship is established where there is an explicit undertaking to perform a specific task.").[3] Mr. Sarris' interactions with Mr. Deaton in March 2025 easily satisfy this definition, regardless of whether Mr. Deaton now expresses a contrary view.

Mr. Sarris knew Mr. Deaton was an attorney, and he contacted him to obtain legal advice. Sarris Decl. ¶¶ 2-3. This can be seen in the contemporaneous communications with Mr. Deaton

---

[3] The law in California, where Mr. Sarris resides, is materially the same. *Shen v. Miller*, 212 Cal. App. 4th 48, 57 (2012) ("When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established prima facie.").

6

that Mr. Sarris marked as "privileged," and his description of their conversations as "privileged discussion[s]." Heyworth Decl., Ex. B. Mr. Sarris also shared with Mr. Deaton confidential information about the issues facing Linqto, which he would not have done if not for his belief those discussions would be protected by the attorney-client privilege. Sarris Decl. ¶ 4.

Mr. Deaton responded to this outreach by providing legal advice and assistance. He recommended to Mr. Sarris a derivative lawsuit in the Delaware Chancery Court and, at Mr. Sarris' explicit request, prepared a draft complaint. *Id.* ¶ 5; Heyworth Decl., Ex. D ("Bill, here is a draft as requested."). Mr. Deaton's defense of his conduct—that he never prepared an engagement letter or invoiced Mr. Sarris for his work—has been uniformly rejected in other, similar cases. *Piven v. Harwood Feffer LLP*, No. 14-6601, 2015 WL 1268002, at *1 n.6 (S.D.N.Y. Mar. 11, 2015) (Kaplan, J.) (citing, *inter alia*, *Lexjac, LLC v. Beckerman*, No. 07-4614, 2008 WL 4936866, at *5 (E.D.N.Y. Nov. 14, 2008) ("[T]he fact that O'Connell did not pay a fee and formally retain Coschignano is not conclusive on the issue of whether O'Connell had an attorney-client relationship with Coschignano . . .").[4] In *Piven*, this Court held that the exchange of emails and phone calls containing legal advice and the drafting of a complaint constituted "compelling" evidence of an attorney-client relationship, even in the absence of an engagement letter or the payment of fees. *Id.* at *1. As in *Piven*, the record of Mr. Sarris and Mr. Deaton's communications, and the draft complaint prepared by Mr. Deaton at Mr. Sarris' request, leaves no doubt that Mr. Deaton "consent[ed] by action" to Mr. Sarris' request for legal services and formed an attorney-client relationship. Restatement (Third) of the Law Governing Lawyers § 14.

**Second**, Mr. Deaton's representation of Mr. Sarris was substantially related to the current litigation. For a substantial relationship between the two matters to exist, it is only required that "facts pertinent to the problems underlying the prior representation are relevant to the subsequent

---

[4] Again, the same principle applies in California. *Shen*, 212 Cal. App. 4th at 57 ("A formal retainer and fee agreement is not necessary."); *Farnham v. State Bar*, 17 Cal. 3d 605, 612 (1976) ("No formal contract or arrangement or attorney fee is necessary to create the relationship of attorney and client.").

7

representation." *Prevezon Holdings,* 839 F.3d at 239. Here, the two representations are based on many of the same "pertinent facts."

The entire premise of the complaint Mr. Deaton prepared a few months ago was that Mr. Siciliano and his allies at Linqto were raising "unnecessary and premature alarm regarding Linqto's regulatory issues" to "delegitimize Linqto's prior leadership"—*i.e.*, Mr. Sarris. Heyworth Decl., Ex. A ¶¶ 33-34. According to Mr. Deaton's complaint, this tactic had the benefit of improving Mr. Siciliano's bargaining position in a self-interested transaction that he was proposing with Linqto. The complaint specifically said that Mr. Siciliano was "pointing to the alleged severity of Linqto's pre-existing regulatory issues" in order to justify Mr. Siciliano's "increasing demands" for a better deal in a personal transaction with Linqto. *Id.* ¶ 22.

In this action, Mr. Deaton's complaint advances the opposite interpretation of the same set of facts. Mr. Deaton now alleges that the regulatory issues at Linqto are so serious they justify rescission of customer sales and the award of millions of dollars in damages. Dkt. 1 at 23. The "severity" of the "regulatory issues" that Mr. Deaton dismissed in his prior representation of Mr. Sarris, *e.g.*, Heyworth Decl., Ex. A ¶ 22, are now the centerpiece of his legal claims against Mr. Sarris, *e.g.,* Dkt. 1 at 9-12.

***Third***, the interests of Mr. Sarris and Mr. Deaton's current clients is not just "materially adverse," they are directly adverse. Mr. Sarris and Mr. Deaton's current clients are aligned directly against each other in the same litigation, where the plaintiffs accuse Mr. Sarris of knowingly violating numerous federal securities laws and regulations and seek to recover damages from him.

***Finally***, Mr. Deaton did not inform Mr. Sarris of his intent to represent the plaintiffs in this matter, and Mr. Sarris has not consented to the representation, in writing or otherwise. Sarris Decl. ¶ 6. In fact, Mr. Sarris did not learn about the existence of this lawsuit until Mr. Deaton began publicizing it on social media on the day of his filing. *Id*.

V.    **CONCLUSION**

For the foregoing reasons, Mr. Sarris respectfully submits that this Motion to Disqualify Mr. Deaton should be granted.

8

| | |
|---|---|
| Dated: July 17, 2025 | Respectfully submitted,<br><br>*/s/ James Heyworth*<br><br>James Heyworth<br>SIDLEY AUSTIN LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>(212) 839-5300<br>jheyworth@sidley.com<br><br>Kevin Rubino (*pro hac vice* forthcoming)<br>krubino@sidley.com<br><br>*Attorneys for Defendant* |

Dated: July 17, 2025                                    Respectfully submitted,

                                                                          */s/ James Heyworth*

                                                                          James Heyworth
                                                                          SIDLEY AUSTIN LLP
                                                                          787 Seventh Avenue
                                                                          New York, New York 10019
                                                                          (212) 839-5300
                                                                          jheyworth@sidley.com

                                                                          Kevin Rubino (*pro hac vice* forthcoming)
                                                                          krubino@sidley.com

                                                                          *Attorneys for Defendant*