# EXHIBIT A

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

VICTOR JIANG                          :
    and                           :
KARIM NURANI                    :
    and                           :     C.A. No.
WILLIAM SARRIS               :
          Plaintiffs          :
                                   :
   v.                               :
                                 :
DANIEL SICILIANO          :
    and                           :
ADAM HENDERSON        :
    and                           :
NORMAN REED                 :
    and                           :
ALISON KUTLER               :
          Defendants        :

## <u>Plaintiff Shareholder Derivative Complaint</u>

### Parties

1. Plaintiff Victor Jiang is an individual and a current board member of Linqto, Inc. with a primary residence at _____

2. Plaintiff Karim Nurani is an individual and a current board member of Linqto, Inc. with a primary residence at _____

3. Plaintiff William Sarris is an individual, and the former CEO and founder of Linqto, Inc. with a primary residence at _____

4. Defendant Daniel Siciliano is an individual and the current Chief Executive Officer of Linqto, Inc. Defendant Siciliano was also formerly the Chief Executive Officer of Nikkl prior to becoming CEO of Linqto and still remains a significant shareholder in Nikkl. Daniel Siciliano's primary residence is at _____

5. Defendant Adam Henderson is an individual and a current board member of Linqto, Inc., with a primary residence at _____

6. Defendant Norman Reed is an individual and a current board member of Linqto, Inc., with a primary residence at _____

7. Defendant Alison Kutler is an individual and a current board member of Linqto, Inc., with a primary residence at _____

## Jurisdiction

8. The Court of Chancery of the State of Delaware has jurisdiction over this action pursuant to 10 Del. C. § 341.

9. Linqto, Inc. is a Delaware corporation, and Defendants' actions complained of herein occurred in the context of their management, direction, and board participation of a Delaware corporation.

## Demand Futility

10. Plaintiffs have made a demand on the board of directors of Linqto, Inc. (the "Board") to take action to address the wrongs alleged herein, specifically to remove Daniel Siciliano from his position as CEO, as well as adding two more board members to mitigate risks of self-serving interests prevailing.

11. Nonetheless, a demand upon the Board would be futile because the current Board is majorly comprised of individuals with significant conflicts of interest, and/or have participated in, or knowingly condoned, the wrongful actions detailed below.

12. Defendant Siciliano, as CEO, wields significant influence over the Board.

13. As detailed below, Defendants have breached their fiduciary duties owed to Linqto shareholders, as well as to Linqto customers, and have demonstrated that they are acting in their own self-interest and/or in the interest of Nikkl shareholders, rather than in the best interests of Linqto shareholders and customers.

14. Therefore, demand on the Board to take the requested action would be futile.

## Factual Allegations

15. Linqto is a company that offers a platform for investment in pre-IPO companies.

16. Nikkl is a company that offers a platform for investment in pre-IPO companies and is a competitor of Linqto.

17. On January 1, 2025, Defendant Siciliano (Siciliano) joined Linqto as CEO.

18. Defendant Adam Henderson is currently the Chairman of the Board and has been throughout all relevant times.

19. Siciliano's offer letter outlined that his appointment was contingent upon a transaction under which Linqto would acquire all of Nikkl's assets in exchange for payment of 1.8 million shares of Linqto stock, with closing anticipated on January 31, 2025.

20. Siciliano did not work to close the transaction on these terms, but instead materially altered said terms.

21. Siciliano proposed a stock transaction, rather than asset acquisition, to the Linqto Board on January 23, 2025, and then presented alternative terms to the Linqto Board on February 24 and March 3, 2025, with increasingly favorable terms for Nikkl and its shareholders and to the detriment of Linqto shareholders.

22. Siciliano justified these increasing demands by pointing to the alleged severity of Linqto's pre-existing regulatory issues.

23. On March 11, 2025, Siciliano sent an email purporting to withdraw Nikkl from consideration as an acquisition target for Linqto.

24. In the email, Siciliano wrote that he hoped that in the future Nikkl and Linqto "could find ways to work together (or more)," indicating he remained committed to the idea of an acquisition.

25. Even taking Siciliano's withdrawal of Nikkl at face value, Siciliano remains a significant shareholder in a direct competitor of Linqto, a company that has never made a profit and depends on being merged with a profitable platform such as Linqto.

26. Siciliano's email does nothing to change the structural conflicts at play; in fact, as Siciliano's conduct further erodes the value of Linqto, he makes a transaction with Nikkl more likely and on terms that are more favorable to Nikkl with each passing day, intentionally causing irreparable damage to the Linqto brand.

27. Siciliano has been leading Linqto through a regulatory investigation while, at the same time, negotiating terms for Linqto's acquisition of his own company.

28. This conflict gives Siciliano a clear financial incentive to achieve two related goals in his handling of the investigation: first, to create an impression that the regulatory issues are much more serious than they really are thus, devaluing Linqto relative to Nikkl and justifying increased cash and/or stock consideration; and second, to create an impression that only Siciliano and his team from Nikkl have the ability to guide Linqto through the investigation safely, making Linqto's future dependent on the Nikkl transaction closing.

29. Siciliano's decisions regarding both the SEC investigation and Linqto's business as a whole demonstrate loyalty to Nikkl shareholders, not Linqto shareholders. Furthermore, his decisions are creating significant confusion and panic among Linqto customers, causing irreparable damage to the Linqto brand.

30. All Defendants violated Linqto bylaws and basic Board procedures to sideline Directors who do not share their views or interests.

31. On March 14, 2025, Linqto (at Siciliano's direction and without prior Board review or consent) issued a press release and shareholder update announcing its new leadership.

32. The sub-title of this release to the public was "New Team Investigating Business and Regulatory Compliance Practices Under Prior Executive Leadership."

33. These communications raised unnecessary and premature alarm regarding Linqto's regulatory issues, causing customers and shareholders significant anxiety that their investments through Linqto's platform, and in Linqto itself, would be lost.

34. Publicly airing these issues at this early stage serves only to delegitimize Linqto's prior leadership, damage Linqto's market position, and consolidate Nikkl's negotiating posture.

35. Despite knowing full well that customer funds and accounts are safe and secure, Siciliano has refused to inform Linqto's customers that their funds are safe, intentionally causing panic and anger and damaging Linqto's reputation and ability to recover customer confidence.

36. The Defendants failed to allay the concerns they created when customers and shareholders sought clarification and guidance; to the contrary, Linqto pushed a request to all customers using its platform asking them to acknowledge that they understood that they could lose all of their investment, even though this had previously been disclosed to all customers investing in Linqto funds.

37. This caused customers' panic to intensify.

38. One shareholder and client emailed Nick Burrafato (Burrafato), then-VP of Member Investments, to share his and other investors' concerns about what was happening and to candidly discuss the risk that Linqto would face a class action lawsuit from its customers.

39. Burrafato forwarded this message to Siciliano, but rather than take action to address the panic he had caused, Siciliano terminated Burrafato and the entire sales team.

40. Siciliano also raised unnecessary alarms in mass communications to Linqto employees, and when employees, such as Nick Burrafato and Karim Nurani, raised concerns about Siciliano's failure to reassure stakeholders, Linqto leadership unnecessarily terminated these employees, giving rise to completely avoidable litigation risk.

41. After shutting down transactions on Linqto's platform, negating any revenue streams, Siciliano also led mass reductions in force, including laying off Linqto's entire sales team, without justifying to the Board why such drastic measures were necessary, and the Defendant board members allowed this to happen.

42. These actions severely impact Linqto's ability to address customer concerns now, and to generate revenue once all regulatory hurdles are cleared.

43. When the Plaintiff Linqto board members have requested current financial information from management to provide the basis for these reductions in force, they have been met with silence.

44. As justification for these layoffs, Siciliano has cited to the Board cash flow considerations, however, Linqto's prior leadership left Siciliano with substantial cash resources on January 1, and those resources have dwindled since.

45. Conversely, Siciliano has brought on numerous former Nikkl employees in key leadership positions in Linqto, each of these employees is a Nikkl shareholder, and undoubtedly share Siciliano's interest in maximizing the consideration that Nikkl receives in any transaction with Linqto and the former Nikkl executives who were hired by Siciliano, including himself, are being paid salaries in the range of $1.5 million annually in the aggregate, while previous Linqto leadership employees have been terminated.

46. Finally, Siciliano has raised the prospect of Linqto filing for Chapter 11 bankruptcy protection.

47. A bankruptcy filing would make no business sense, as Linqto has no debt, and was **profitable in every month** for years until January, the first of Siciliano's tenure, but it would allow Nikkl to obtain even more favorable terms in an acquisition, relative to Linqto's shareholders, by acquiring assets free and clear through the Chapter 11 process.  A bankruptcy filing would also cause massive panic among customers, fearing

that they might lose, not only unrealized gains associated with their investments on the Linqto Platform, but also lose their initial capital investments. Plaintiffs' fear that Siciliano, along with his Nikkl team, could very well be targeting the potential acquisition of customer purchased private equity shares by creating an environment of uncertainty and panic.

48. In his first few months as CEO, Siciliano has failed to set forth a vision or plan for resolving Linqto's regulatory issues and framing a compliant business model that can drive revenue, instead raising unnecessary alarms that benefitted his own interests as a Nikkl shareholder, while using high-risk Board machinations to sideline any independent oversight of his leadership.

49. Defendants have manipulated and abused Board processes to bar non-conflicted Directors from exercising oversight of their actions.

50. Board members have been excluded from certain meetings for reasons not made clear to those members and at Siciliano's direction, the Board created a General Committee that has virtually all powers of the full Board and, on creation, included all Board members except for Bill Sarris.

51. This has the effect of removing Sarris from the Board without cause something that Linqto's bylaws do not authorize the Board to do.

52. Alison Kutler was appointed as common stockholder designee without proper authorization because a Board member who would have objected to her appointment was excluded from the meeting at which she was appointed by a 3 to 2 vote.

53. The exclusion of the duly elected member for the first half hour of the meeting had the effect of electing a new director who would not have been elected if said director had been allowed to be present and vote.

54. Siciliano circulated a bylaw amendment without proper time for Board members to consider the amendment in a manner that would allow them to fulfill their fiduciary duties.

55. The vote was tabled for a day and another meeting held where a 4 to 3 vote in favor of the amendment was carried.

56. Siciliano has called numerous board meetings and board discussions without meeting agendas, depriving members of the ability to prepare for the meetings in a manner that would allow them to fulfill their fiduciary duties.

57. Siciliano has directed the hiring of outside counsel for the company by some but not all Board members, without notice to or input from the full Board.

58. Siciliano has directed the creation of a sub-committee of "independent" directors that includes directors aligned with Siciliano but excludes others, such as Victor Jiang, who have no affiliation with or employment by Linqto or Nikkl but are not aligned with Siciliano and his Nikkl team.

59. Legal counsel has been provided to these "independent" directors at company expense, but not to Victor Jiang.

60. Siciliano has played a diabolical shell game regarding the composition and machinations of the Board. Defendants Reed, Henderson and Kutler have not only stood by, but have participated in this shell game at the expense of Linqto shareholders and customers, and in violation of their fiduciary obligations.

## Count I
### Breach of Fiduciary Duty of Loyalty, Care and Good Faith Dealing
### (All Defendants)

61. Defendants, Adam Henderson, Daniel Siciliano, Norman Reed, and Alison Kutler, owed fiduciary duties of loyalty, care, and good faith dealing to Linqto, its shareholders, and customers.

62. Defendants breached their fiduciary duty of loyalty by:

   a. Placing their own interests and the interests of Nikkl shareholders above the interests of Linqto, its shareholders, and customers.

   b. Siciliano manipulated the terms of the Nikkl acquisition to benefit himself and Nikkl shareholders at the expense of Linqto shareholders and customers, and the other Defendants either supported such actions, or did nothing to prevent them.

   c. Shifting key leadership positions to Nikkl employees.

    d.  Attempting to force Linqto into Chapter 11 bankruptcy to facilitate a more favorable acquisition of Linqto's assets by Nikkl, and potentially target the acquisition of customer assets.

63. Defendants breached their fiduciary duty of care by:

    a.  Failing to properly address and mitigate Linqto's regulatory issues, and instead used them to advance Siciliano and the Nikkl team's interests.

    b.  Making premature and damaging public announcements regarding regulatory issues, causing confusion, anger, and panic among Linqto customers, which has caused irreparable harm to Linqto's brand, reputation and market position, and exposing Linqto and its Board to class action litigation by both shareholders and customers.

    c.  Mishandling employee relations, resulting in unnecessary terminations and exposing Linqto and Board members to potential litigation.

    d.  Implementing drastic measures such as mass layoffs without proper justification or providing necessary financial information to the Board.

64. Defendants breached their duty of good faith dealing by:

    a.  Manipulating Board processes and excluding directors who did not align with their interests.

    b.  Preventing independent oversight of their actions and obstructing the Board from performing their duties.

    c.  Providing skewed information and making misrepresentations to the Board.

    d.  Demonstrating bad faith and self-serving motives in their dealings regarding Linqto, its shareholders and customers.

**Count II**
**Breach of Employment Agreement**
**(Defendant Daniel Siciliano)**

65. Siciliano entered into an employment agreement with Linqto on or about January 1, 2025.

66. Pursuant to the employment agreement, Siciliano was required to close the Nikkl scrip-for-scrip transaction with Linqto by January 31, 2025.

67. Siciliano breached his employment agreement by failing to close the Nikkl transaction by the agreed-upon deadline.

68. Siciliano further breached his employment agreement by acting against the best interests of Linqto, its stakeholders, and customers.

**Count III**
**Violation of Company Bylaws**
**(All Defendants)**

69. Linqto's bylaws govern the conduct of its Board of Directors and officers.

70. Defendants have violated Linqto's bylaws by:

   a. Excluding board members from meetings without proper cause and/or negligently allowing such improper actions to occur.

   b. Directing the creation of a General Committee with the effect of removing a director from the Board without cause, which the bylaws do not authorize.

   c. Appointing a director without proper authorization and in a meeting where a board member was improperly excluded.

   d. Circulating and enacting bylaw amendments without providing board members adequate time to consider them.

   e. Calling board meetings and discussions without providing agendas.

   f. Directing the hiring of outside counsel without full Board approval.

   g. Creating a sub-committee of "independent" directors that excluded certain directors without justification

**Prayer For Relief**

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

71. An order removing Daniel Siciliano from his position as CEO of Linqto, Inc. and removing any other conflicted members.

72. Appointing a Trustee to act as interim-CEO.

73. Injunctive relief to reverse and rescind any bad faith decisions made through improperly formed Sub-Committees.

74. Injunction from filing Bankruptcy, at least until the resolution of this matter.

75. An award of any monetary damages caused by the result of the breaches alleged herein, including without limitation a diminished company valuation, or loss of consumer base.

76. Such other relief as the Court deems just and equitable.