# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>LINQTO TEXAS, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-90186 (ARP)<br><br>(Jointly Administered) |

## CREDITORS' MOTION TO COMPEL DEBTORS' PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004

> Pursuant to Local Bankruptcy Rule 9013-1:
>
> This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing, should the Court schedule a hearing. Unless the parties agree otherwise, the Court may consider evidence at any hearing scheduled and may decide the motion at the hearing or on the papers.
>
> Represented parties should act through their attorney.

Creditors A.O.H. Driedijk Holding B.V. and Jaimin Bhatt (collectively, "Creditors") respectfully move for an order compelling Debtors' production of documents requested by Creditors in their Notice of Rule 2004 Examination and Document Production Requests ("Document Requests"), dated November 11, 2025, Dkt. 1028, and attached as Exhibit 1 to the

---

[1] The terms "Linqto" or "Debtors" means: Linqto, Inc., Linqto Liquidshares, LLC, Linqto Liquidshares Manager, LLC, and Linqto Texas, LLC.

Declaration of Catherine Pratsinakis filed in support of this Motion, simultaneously herewith ("Pratsinakis Decl."), for the reasons that follow:

## RELIEF REQUESTED

1. Creditors seek entry of an order, substantially in the form filed simultaneously herewith (the "Proposed Order"), compelling Debtors to produce documents responsive to the Document Requests set forth as Ex. 1 to the Pratsinakis Decl.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Creditors confirm their consent to the entry of a final order by the Court.

4. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

5. The bases for the relief requested herein are Section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2004; Bankruptcy Local Rules 2004-1, 1075-1, and 9013-1; and the Procedures for Complex Cases in the Southern District of Texas.

## FACTUAL AND PROCEDURAL BACKGROUND

6. Linqto held itself out as a financial technology and digital trading platform purporting to offer investors the ability to invest in privately-held companies ("Pre-IPO Companies"). Historically, Pre-IPO Companies only sold shares to large institutional investors and exceptionally wealthy individuals that could invest large chunks of capital at once, with minimum investment thresholds ranging anywhere for tens of thousands to millions of dollars. Therefore, eager investors wanted the opportunity to invest in these startups, but the vast majority were shut out.

2

7. Linqto was supposedly the solution for these investors. Between February 2020 and March 14, 2025, Linqto operated an online trading and private equity investment platform (the "Platform") which purported to "allow[] accredited investors to identify, evaluate, invest in, and make liquid investments in the world's leading unicorns and private companies."

8. The Platform ostensibly facilitated the purchasing of shares—investments—in Pre-IPO Companies and quickly gained in popularity. Linqto's popularity, however, was built on deceiving customers who made investments through the Platform. Contrary to the Company's marketing, the Platform was not designed to facilitate the purchasing of shares at all. Instead, customers were purchasing interests in Linqto Series, special purpose vehicles created by Liquidshares, another Linqto creation, that actually held shares of the Pre-IPO Companies. These purchases are known as "Series Membership Interests". Linqto welcomed non-accredited investors—whose business generated a handsome profit—onto the Platform, improperly classifying at least 5,000 investors as "retail investors" to circumvent regulatory requirements. Unbeknownst to its customers, Linqto was imposing undisclosed, excessive markups and fees on purchases of Linqto Series. Linqto markups ranged anywhere from 20-60% and as much as 150% of the acquisition price.

9. Creditors purchased Series Membership Interests in one or more Series of Liquidshares through Linqto's Platform.

10. By October 2023, Debtors were formally put on notice when an outside law firm retained to conduct a regulatory review of Linqto's products and services wrote a memorandum informing the Company that its practices, including selling to non-accredited investors and charging undisclosed, exorbitant markups and fees, as well as its offering structure, violated several federal and state securities laws. Linqto did not address these serious regulatory and

3

compliance deficiencies, and almost exactly a year later, Linqto's then-CEO, William Sarris, received another legal memorandum, this time from Linqto's internal counsel, advising that many of the federal securities law issues, raised in the October 2023 memorandum, needed to be addressed in light of recent SEC requests and likely FINRA enforcement actions.

11. In January 2025, certain officers were removed, and new management initiated an investigation into Debtors' pervasive securities law violations. The new management arrived at the decision to file for bankruptcy, freeze its customers' accounts and shut down the Linqto Platform.

12. On July 7, 2025, Debtors filed their voluntary petitions under Chapter 11 of the Bankruptcy Code (collectively, the "Bankruptcy"). On July 18, 2025, the Office of the United States Trustee for the Southern District of Texas appointed an Official Committee of Unsecured Creditors (the "Committee").

13. Creditors filed their proofs of claim in the Chapter 11 Cases. *See* Creditors' Proofs of Claim filed on July 14, 225, July 22, 2025, and July 24, 2025, and available at Claim Nos. 10560, 10156, and 10642.

14. On September 17, 2025, Creditors were appointed by the District Court in the Southern District of New York to represent a class of Linqto investors in a securities fraud class action captioned as, *A.O.H. Driedijk Holding B.V. et al. v. Sarris et al.*, No. 1:25-CV-05643-LAK, at SDNY Dkt. 26.

15. On September 24, 2025, Creditors' Counsel reached out to Debtors' Counsel to request information related to Creditors' Series Membership Interests, the allegations of Linqto's fraud and securities law violations, and the financial condition of the Debtors. Pratsinakis Decl. at ¶ 4. To create efficiencies, Creditors' Counsel offered to accept documents previously

4

produced to other creditors, namely the Committee of Unsecured Creditors. Creditors' Counsel followed up by email on September 26, 2025, and October 7, 2025, and had three unproductive phone calls with Debtors' Counsel. Pratsinakis Decl. at ¶¶ 4–7. Between November 3, 2025, and November 5, 2025, Creditors' Counsel communicated with Debtors' Counsel to coordinate a final meet and confer. Pratsinakis Decl. at ¶¶ 8–10.

16. On November 6, 2025, the parties' counsel held a final meet and confer whereby Debtors' Counsel agreed to produce certain documents and to consider production of others, including: (1) documents produced by Debtors to the Securities Exchange Commission; (2) documents relating to and/or prepared by Debtors' auditor; (3) documents produced to a subcommittee of Linqto, Inc.'s Board tasked with investigating former insiders' wrongdoing; and (4) any insurance agreements under which an insurance business may be liable to satisfy all or part of a possible judgment in a civil action against the Debtors or its officers and directors. Pratsinakis Decl. at ¶ 11. Following the meet and confer, Creditors' Counsel sent a confirmatory email and followed up with Debtors' counsel. Debtors' counsel did not respond. Pratsinakis Decl. at ¶¶ 12–13.

17. On November 19, 2025, after months of good faith effort to resolve their request for information, Creditors filed a *Notice of Rule 2004 Examination and Document Production Requests* pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, and Bankruptcy Local Rule 2004-1. Pratsinakis Decl. at Ex. 1. Creditors served the Notice on Debtors via ECF and by email that was sent the same day. Pratsinakis Decl. at ¶ 14.

18. Creditors' Document Requests generally seek documents and information related to Linqto's offer and sale of Series Membership Interests; financial wellbeing and performance; retention of an auditor; dealings with Pre-IPO Companies; corporate formation; insurance policies;

5

among other requests. The requested documents have been previously produced by Debtors to other creditors, government regulators, and interested third parties. Pratsinakis Decl. at ¶¶ 5–6, 11, 14.

19. Debtors were required by law to object to the Document Requests and/or file their motion to quash or motion for a protective order by November 26, 2025 (the "Response Deadline"). Debtors failed to respond by the Response Deadline.

20. On December 3, 2025, a week after the Response Deadline had passed, Debtors served general objections to Creditors' Document Requests. Pratsinakis Decl. at Ex. 2.

21. At a hearing held on December 5, 2025, counsel for a special committee of the Linqto Board offered to produce documents reviewed by the special committee. On December 5, 2025, Creditors' Counsel sent an email to Steven Reissman of the firm Katten Muchin Rosenman LLP, requesting a copy of these documents. Pratsinakis Decl. at ¶ 15.

**LEGAL ARGUMENT**

A. **Creditors' Document Requests are Permissible Under the Bankruptcy Rules**

22. Bankruptcy Rule 2004 is "the basic discovery device in bankruptcy cases." *In re Augustus*, No. 05-83177 G37, 2007 WL 172525, at *2 (Bankr. S.D. Tex. Jan. 18, 2007). Bankruptcy Rule 2004 permits the examination of debtors' "acts, conduct, or property…liabilities and financial condition [or] any matter that may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b); *In re Buccaneer Res., LLC*, No. 14-60041, 2015 WL 8527424, at *6 (Bankr. S.D. Tex. Dec. 10, 2015). "Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (internal citations omitted).

6

23. A Rule 2004 exam is "a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate **and the exposure of fraudulent conduct**." *In re Correra*, 589 B.R. 76, 108 (Bankr. N.D. Tex. 2018) (internal citations omitted) (emphasis added); *In re Bounds*, 443 B.R. 729, 736 (Bankr. W.D. Tex. 2010) ("Courts have suggested that the scope of a Rule 2004 examination is broad, several likening it to a "fishing expedition."").

24. Courts are reluctant to deny a Rule 2004 examination "unless the party can show that the examination would be oppressive or burdensome." *In re Correra*, 589 B.R. at 108; *see also In re Buccaneer*, 2015 WL 8527424 at *6 (Bankr. S.D. Tex. Dec. 10, 2015) ("[T]he examination should not be so broad as to be more disruptive and costly to the . . . [party being examined] than beneficial to the . . . [party requesting the examination].") (internal quotations and citations omitted). In allowing a Rule 2004 examination, a court must balance "the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Millennium Lab Holdings II, LLC*, 562 B.R. at 626 (Bankr. D. Del. 2016).

25. Creditors' Document Requests are permissible under Bankruptcy Rule 2004 and seek information regarding the creation and sale of Series Membership Interests, the financial wellbeing and performance of Linqto, Linqto's retention of an auditor, its communications with Pre-IPO Companies, insurance policies, and corporate formation documents, among other requests. Pratsinakis Decl. at ¶ 14.

26. Creditors believe these documents will expose fraudulent conduct of the Debtors and their officers and directors and shed light on any potential co-conspirators. This information will provide significant insight into the financial affairs of the Debtors and uncover potential

7

liabilities of the Debtors and related parties to the Chapter 11 Cases. The Document Requests are also not overly burdensome to Debtors because these documents have been previously produced by Debtors to other creditors, regulators and interested parties.

B. **Debtors Have Failed to Comply with Rule 2004 and Waived Their Objections**

27. Despite their obligation to do so, Debtors failed to timely object in seven (7) days, or November 26, 2025. On December 3, 2025, Debtors belatedly responded to Creditors' Document Request by objecting to all but one request. Pratsinakis Decl. at ¶ 3.

28. Debtors waived their objections by failing to timely respond and comply with Local Rule 2004-1(f). *See In re Dernick*, No. 18-32417, Courtroom Minutes (Bankr. S.D. Tex. Aug. 27, 2018) (the court granted a motion to compel production of documents under Rule 2004 where movants argued debtor waived objections by failing to timely object to the request). *See also In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989) (the "general rule" is that when a party fails to object timely to production requests, "objections thereto are waived". . .; "[w]e readily agree with the district court that as a general rule, when a party fails to object timely to interrogatories, production requests or other discovery efforts, objections thereto are waived."); *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, Civ. No. H–07–2426, 2008 WL 2036816, *5 (S.D. Tex. May 9, 2008) (holding "defendants have not shown good cause for making untimely objections to the interrogatories and production requests.").

C. **The Court Should Compel the Production of Documents Responsive to Creditors' Document Requests**

29. Creditors seek information that is critical to their investigation of Debtors' wrongdoing. Creditors seek to determine how the Series Membership Interests operated, how Linqto Liquidshares, LLC offered and sold Series Membership Interests, the financial condition of the Debtors, the details of Debtors' fraudulent conduct and to what extent other third parties

8

assisted them with the fraud, including their officer and directors, the auditor, and the Pre-IPO Companies.

30. Creditors will soon be asked to cast their ballots on a proposed Chapter 11 Plan without a meaningful understanding of their rights, interests, and claims as holders of Series Membership Interest. Creditors will also be asked by Debtors to release claims that they have had no meaningful opportunity to assess. By compelling Debtors to respond to the Document Requests, Creditors will have a more meaningful understanding of their rights, interests and claims as holders of Series Membership Interest, and will also be in a better position to assess the releases requested by Debtors.

31. Debtors also generally object to the Document Requests because there is a "corollary litigation" pending. *See* Pratsinakis, Ex. 2, General Objection at ¶7. But "some courts have allowed discovery under Rule 2004 even when it is in aid of pending litigation. . . . " *See In re Mirant Corp.*, 326 B.R. 354 (Bankr. N.D. Tex. 2005) (citing *In re Sun Med. Mgmt., Inc.*, 104 B.R. 522 (Bankr. M.D. Ga. 1989) (granting request for Rule 2004 examinations where adversary proceeding had been filed, but answers were not yet due); *In re Analytical Sys., Inc.*, 71 B.R. 408, 413 (Bankr. N.D. Ga. 1987) ("The fact that there is pending litigation between the parties is not relevant to a decision to allow a Rule 2004 examination.")). Debtors cannot use the existence of corollary litigation to shield themselves from their responsibilities under Bankruptcy Rule 2004, particularly where Debtors admit to securities fraud.

32. Despite Creditors' significant efforts to obtain Debtors' voluntary compliance under Rule 2004 and negotiate satisfactory responses to their Document Requests, Debtors have failed to engage in good faith and have engaged in a pattern of delay without a reasonable basis.

9

33. Accordingly, Creditors respectfully request that the Court compel Debtors production of documents and communications responsive to the Document Requests.

## NOTICE

34. Creditors will provide notice of this motion to the following parties or their respective counsel: (a) Debtors in the Chapter 11 Cases; (b) the U.S. Trustee; (c) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (d) the holders of the 100 largest customer claims against the Debtors; (e) the DIP Lender; (f) the office of the attorneys general for the states in which the Debtors operate; (g) the United States Attorney's Office for the Southern District of Texas; (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; (j) other regulatory agencies having a regulatory or statutory interest in these Chapter 11 Cases; (k) the Creditor's Committee; (l) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (m) the parties affected by this motion. The Creditors respectfully submit that, in light of the nature of the relief requested, no other or further relief is necessary.

WHEREFORE, Creditors request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: December 8, 2025          Respectfully submitted,

                                             **BRAZIL & DUNN LLP**

                                             /s/ *Chad W. Dunn*
                                             Chad W. Dunn
                                             13231 Champion Forest Drive, Suite 406
                                             Houston, Texas 77069
                                             Telephone: (281) 580-6310
                                             chad@brazilanddunn.com

Case 25-90163-CML Document 1127 Filed in TXSB on 12/08/25 Page 11 of 13

**DILWORTH PAXSON, LLP**
Catherine Pratsinakis (admitted PHV)
Anne M. Aaronson (admitted PHV)
1650 Market St., Suite 1200
Philadelphia, PA 19103
(215) 575-7110
cpratsinakis@dilworthlaw.com
aaaronson@dilworthlaw.com
mheinzerling@dilworthlaw.com

*Counsel to A.O.H. Driedijk Holding B.V. and Jaimin Bhatt*

11

## CERTIFICATE OF CONFERENCE

I, the undersigned, hereby certify that I have made a good faith effort to resolve this discovery dispute without the Court's action. In particular, I communicated with Debtors via telephone on November 4, 2025, via video conference on November 6, 2025, and via email several times between November 3, 2025, and November 7, 2025. I attempted several follow-up communications after Debtors verbally stated they would provide certain non-privileged and non-confidential documents already produced to other parties.

/s/ *Anne M. Aaronson*
Anne M. Aaronson

## CERTIFICATE OF SERVICE

I certify that on December 8, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Chad W. Dunn*
Chad W. Dunn