**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| A.O.H. DRIEDIJK HOLDING B.V. and JAIMIN BHATT, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>WILLIAM SARRIS, JOSEPH A. ENDOSO, DAVID PAUL, BRIAN MORAN, KARIM NURANI, MARGARET SLEMMER, VICTOR JIANG, ALISON DAVIS, NORMAN REED, ADAM T. HENDERSON, and RAINMAKER SECURITIES, LLC,<br><br>    Defendants. | No. 1:25-cv-5643 (LAK) (BCM) |

---

**SUPPLEMENTAL MEMORANDUM OF LAW OF DEFENDANT BRIAN MORAN IN SUPPORT OF MOVING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

---

**CHIESA SHAHINIAN & GIANTOMASI PC**
Lee Vartan, Esq.
11 Times Square, 34th Floor
New York, New York 10036
Telephone: (212) 973-0572
lvartan@csglaw.com

*Attorneys for Defendant Brian Moran*

i

## PRELIMINARY STATEMENT[1]

The First Amended Complaint ("FAC"), spanning more than sixty pages and two hundred paragraphs, asserts claims against eleven defendants over a purported years-long scheme at Linqto, Inc. ("Linqto"). Yet Brian Moran, Linqto's Chief Compliance Officer ("CCO") from November 2021 to August 2024, is named in a grand total of two factual allegations. *See* FAC ¶¶ 142, 146. Neither allegation supports an inference that Mr. Moran made a false statement, engaged in a deceptive act, acted with scienter, or exercised control over the conduct alleged in the FAC.  Rather than pleading facts showing what Mr. Moran himself said, knew, approved, or did, Plaintiffs impermissibly rely on conclusory allegations of conduct attributed to "Defendants" as an undifferentiated group. Such shotgun pleading is insufficient under any pleading standard, and especially so for actions brought pursuant to the Private Securities Litigation Reform Act ("PSLRA"). *See* Fed. R. Civ. P. 8(a), 15 U.S.C. § 78u-4(b); *see also George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 449 (S.D.N.Y. 2016) ("[T]he [Rule 8] standard cannot be satisfied by lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct."); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (discussing the "heightened pleading requirements" for securities fraud claims).

Because all the FAC's claims depend on conclusory and collective allegations, the First Amended Complaint should be dismissed as to Mr. Moran pursuant to Rule 12(b)(6).

---

[1]     Defendant Brian Moran joins the Moving Defendants' Motion to Dismiss the First Amended Complaint, and incorporates the statement of facts and arguments set forth therein, and submits this supplemental memorandum to further address issues unique to him.

## ARGUMENT

### I.    THE FAC'S TWO ALLEGATIONS REGARDING MR. MORAN DO NOT SUPPORT ANY OF PLAINTIFFS' CLAIMS AGAINST HIM.

Plaintiffs' principal allegation concerning Mr. Moran appears in Paragraph 142 of the FAC. The FAC, relying on an unnamed former marketing employee, states that "Linqto's Compliance team, which consisted solely of Defendant Moran . . . often insisted that marketing remove language in the fine print about Linqto's accredited investor requirements, causing tension between Compliance and Marketing." FAC ¶ 142. This vague allegation notably does not identify the language at issue, when and where this language allegedly appeared, what revision Mr. Moran allegedly advocated for, whether such revision was implemented, or how any investor was misled as a consequence. At most, the allegation suggests that Mr. Moran participated in compliance reviews of marketing materials.

The only other allegation naming Mr. Moran states that Linqto's former Chief Risk Officer "convene[d] a weekly 'Risk Meeting' with top executives, including Defendants Endoso and Moran, to discuss" issues within the company. FAC ¶ 146. Again, the FAC does not allege when or where those meetings occurred, what information Mr. Moran received by virtue of his attendance, or whether Mr. Moran directed any action in response.

Neither of these allegations is sufficient to establish liability under Rule 10b-5(b). "A securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Nor do they satisfy the requirement that Plaintiffs plead a deceptive act attributable to Mr. Moran for purposes of scheme liability under Rule 10b-5(a) or (c). *See Plumbers & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105

(2d Cir. 2021) ("To state a scheme liability claim, a plaintiff must show: (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance."). The allegations also fail to raise the requisite "strong inference" of scienter imposed by the PSLRA. *See ATSI Commc'ns*, 493 F.3d at 99 (discussing the PSLRA's heightened standard for scienter).

The deficiency is not limited to Plaintiffs' Rule 10b-5 theories. Indeed, these two allegations are insufficient to support any of Plaintiffs' claims. These are the only two non-conclusory allegations concerning Mr. Moran's conduct, yet neither alleges that he sold or solicited any security, directed any offering activity, exercised control over the alleged conduct, or personally participated in any violation alleged elsewhere in the FAC. Plaintiffs therefore fail to plead the individualized involvement necessary to impose liability on Mr. Moran under any of their theories.

## II.    THE FAC OTHERWISE FAILS TO PLEAD PARTICULARIZED FACTS REGARDING MR. MORAN.

The rest of the FAC has virtually nothing to say regarding Mr. Moran. To the extent Plaintiffs ask this Court to infer Mr. Moran's involvement from his corporate title alone, this would be error. *See In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 382 (S.D.N.Y. 2004*), aff'd sub nom. Albert Fadem Tr. v. Citigroup, Inc.*, 165 F. App'x 928 (2d Cir. 2006) (holding "[p]osition as an officer alone . . . is insufficient to support an inference of scienter" in securities fraud action). It would likewise be improper to credit the FAC's global and conclusory allegations against "Defendants" as a whole. *See*, *e.g.*, *George*, 221 F. Supp. 3d at 449 ("[A] complaint should provide specification of any particular activities by any particular defendant.").

This defect in the FAC is particularly salient because Plaintiffs seek to attribute knowledge to Mr. Moran in late 2024, after he had vacated the CCO position at Linqto. Contrary to Plaintiffs'

3

claim that Mr. Moran served as CCO of Linqto until December 2024, (FAC ¶ 23), Mr. Moran ceased serving as CCO in August 2024.[2] Ex. A. Yet Plaintiffs heavily rely on events occurring thereafter, including Mr. Sarris's receipt of an October 2024 legal memorandum.[3] *See* FAC ¶¶ 104-110.

Ultimately, the FAC fails to articulate any particularized allegations of misconduct that could substantiate its claims against Mr. Moran.

## CONCLUSION

For the foregoing reasons, Defendant Brian Moran respectfully requests that the Court dismiss the First Amended Complaint as to him.

Respectfully Submitted,

Dated: July 30, 2026

**CHIESA SHAHINIAN & GIANTOMASI PC**
*/s/ Lee Vartan*
Lee Vartan, Esq.
11 Times Square, 34th Floor
New York, New York 10036
Telephone: (212) 973-0572
lvartan@csglaw.com

---

[2]    Mr. Moran's publicly available FINRA BrokerCheck report reflects that he served as Chief Compliance Officer at Linqto from November 2021 to August 2024. The Court may take judicial notice of FINRA BrokerCheck records. *Tanjutco v. NYLife Sec. LLC*, No. 23-CV-4889 (BCM), 2024 WL 4135686, at *2 (S.D.N.Y. Sept. 10, 2024). A true and correct copy of Mr. Moran's BrokerCheck report is attached as Exhibit A.

[3]    Indeed, ¶ 104 states the October 2024 legal memorandum was submitted to Mr. Sarris by, among others, CCO Susan Woodard—further evidencing that Mr. Moran was no longer in that role.

# <u>EXHIBIT A</u>



**BrokerCheck Report**

# Brian Michael Moran

CRD# 1940341

| Section Title | Page(s) |
| --- | --- |
| Report Summary | 1 |
| Broker Qualifications | 2 - 7 |
| Registration and Employment History | 9 - 13 |
| Disclosure Events | 14 |

 When communicating online or investing with any professional, make sure you know who you're dealing with. Imposters might link to sites like BrokerCheck from phishing or similar scam websites, or through social media, trying to steal your personal information or your money.

Please contact FINRA with any concerns.



**About BrokerCheck®**

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.

- **What is included in a BrokerCheck report?**
- BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.
- Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.
- **Where did this information come from?**
- The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
  - o information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
  - o information that regulators report regarding disciplinary actions or allegations against firms or brokers.
- **How current is this information?**
- Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.
- **What if I want to check the background of an investment adviser firm or investment adviser representative?**
- To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at https://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.
- **Are there other resources I can use to check the background of investment professionals?**
- FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.
-

**Thank you for using FINRA BrokerCheck.**



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at

brokercheck.finra.org



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck.  It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.



## Brian M. Moran
CRD# 1940341

**Currently employed by and registered with the following Firm(s):**

**B**   **FUNDAMENTAL INTERACTIONS NEUTRON DIRECT, LLC**
115 West 30th Street
Suite 207
New York, NY 10001
CRD# 322233
Registered with this firm since: 03/29/2023

**B**   **CICADA SECURITIES**
289 Greenwich Avenue
Floor 2
Greenwich, CT 06830
CRD# 314109
Registered with this firm since: 02/08/2022

## Report Summary for this Broker

This report summary provides an overview of the broker's professional background and conduct. Additional information can be found in the detailed report.

### Broker Qualifications

**This broker is registered with:**

- 1 Self-Regulatory Organization
- 3 U.S. states and territories

**This broker has passed:**

- 3 Principal/Supervisory Exams
- 7 General Industry/Product Exams
- 2 State Securities Law Exams

### Registration History

**This broker was previously registered with the following securities firm(s):**

**B**   **SHARENETT SECURITIES LLC**
CRD# 151011
NEW YORK, NY
06/2020 - 11/2025

**B**   **VEX SECURITIES**
CRD# 317371
San Jose, CA
08/2023 - 11/2025

**B**   **LINQTO CAPITAL**
CRD# 314557
San Jose, CA
12/2022 - 12/2024

### Disclosure Events

All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

Are there events disclosed about this broker? **Yes**

**The following types of disclosures have been reported:**

| Type | Count |
|------|-------|
| Regulatory Event | 1 |

©2026 FINRA. All rights reserved. Report about Brian M. Moran.

# Broker Qualifications



## Registrations

This section provides the self-regulatory organizations (SROs) and U.S. states/territories the broker is currently registered and licensed with, the category of each license, and the date on which it became effective. This section also provides, for every brokerage firm with which the broker is currently employed, the address of each branch where the broker works.

**This individual is currently registered with 1 SRO and is licensed in 3 U.S. states and territories through his or her employer.**

### Employment 1 of 2

| | |
|---|---|
| Firm Name: | **CICADA SECURITIES** |
| Main Office Address: | **289 GREENWICH AVE**<br>**FLOOR 2**<br>**GREENWICH, CT  06830** |
| Firm CRD#: | **314109** |

| | **SRO** | **Category** | **Status** | **Date** |
|---|---|---|---|---|
| B | FINRA | General Securities Principal | Approved | 02/08/2022 |
| B | FINRA | General Securities Representative | Approved | 02/08/2022 |
| B | FINRA | Investment Banking Principal | Approved | 02/08/2022 |
| B | FINRA | Investment Banking Representative | Approved | 02/08/2022 |
| B | FINRA | Limited Representative-Prvt Scrts Ofrngs | Approved | 02/08/2022 |
| B | FINRA | Operations Professional | Approved | 02/08/2022 |
| B | FINRA | Private Securities Offerings Principal | Approved | 02/08/2022 |
| B | FINRA | Compliance Officer | Approved | 07/25/2025 |
| B | FINRA | Financial and Operations Principal | Requalification | 02/03/2026 |

| | **U.S. State/ Territory** | **Category** | **Status** | **Date** |
|---|---|---|---|---|
| B | Connecticut | Agent | Approved | 07/18/2024 |
| B | New York | Agent | Approved | 09/25/2024 |

## Branch Office Locations

◆2026 FINRA. All rights reserved. Report about Brian M. Moran.

**Broker Qualifications**



## Employment 1 of 2, continued

**CICADA SECURITIES**
289 Greenwich Avenue
Floor 2
Greenwich, CT  06830

## Employment 2 of 2

Firm Name:                      **FUNDAMENTAL INTERACTIONS NEUTRON DIRECT, LLC**

Main Office Address:    **115 WEST 30TH STREET**
**FOURTH FLOOR  UNIT 401**
**NEW YORK, NY  10001**

Firm CRD#:                   **322233**

| | SRO | Category | Status | Date |
|---|---|---|---|---|
| B | FINRA | General Securities Principal | Approved | 03/29/2023 |
| B | FINRA | General Securities Representative | Approved | 03/29/2023 |
| B | FINRA | Investment Banking Representative | Approved | 03/29/2023 |
| B | FINRA | Operations Professional | Approved | 03/29/2023 |
| B | FINRA | Compliance Officer | Approved | 06/19/2024 |
| B | FINRA | Financial and Operations Principal | Requalification | 02/03/2026 |

| | U.S. State/ Territory | Category | Status | Date |
|---|---|---|---|---|
| B | New York | Agent | Approved | 12/13/2023 |
| B | North Carolina | Agent | Approved | 06/10/2025 |

## Branch Office Locations

**FUNDAMENTAL INTERACTIONS NEUTRON DIRECT, LLC**
115 WEST 30TH STREET
FOURTH FLOOR  UNIT 401
NEW YORK, NY  10001

�2026 FINRA. All rights reserved. Report about Brian M. Moran.

**Broker Qualifications**



## Employment 2 of 2, continued
**FUNDAMENTAL INTERACTIONS NEUTRON DIRECT, LLC**
115 West 30th Street
Suite 207
New York, NY  10001

⬥2026 FINRA. All rights reserved. Report about Brian M. Moran.                                    4

�2026 FINRA. All rights reserved. Report about Brian M. Moran.

**Broker Qualifications**



## Industry Exams this Broker has Passed

This section includes all securities industry exams that the broker has passed. Under limited circumstances, a broker may attain a registration after receiving an exam waiver based on exams the broker has passed and/or qualifying work experience. Any exam waivers that the broker has received are not included below. A passed exam or exam waiver does not permit a broker to do business without an active SRO or state registration.

**This individual has passed 3 principal/supervisory exams, 7 general industry/product exams, and 2 state securities law exams.**

### Principal/Supervisory Exams

| | Exam | Category | Date |
|---|---|---|---|
| B | Compliance Officer Examination | Series 14 | 06/19/2024 |
| B | Financial and Operations Principal Examination | Series 27 | 03/17/1999 |
| B | General Securities Principal Examination | Series 24 | 02/17/1999 |

### General Industry/Product Exams

| | Exam | Category | Date |
|---|---|---|---|
| B | Limited Representative-Private Securities Offerings | Series 82TO | 01/02/2023 |
| B | Operations Professional Examination | Series 99TO | 01/02/2023 |
| B | Investment Banking Registered Representative Examination | Series 79TO | 01/02/2023 |
| B | Investment Company Products/Variable Contracts Representative Examination | Series 6TO | 01/02/2023 |
| B | Corporate Securities Limited Representative Examination | Series 62 | 01/02/2023 |
| B | Securities Industry Essentials Examination | SIE | 07/02/2018 |
| B | General Securities Representative Examination | Series 7 | 01/18/1999 |

### State Securities Law Exams

| | Exam | Category | Date |
|---|---|---|---|
| IA | Uniform Investment Adviser Law Examination | Series 65 | 03/30/2005 |
| B | Uniform Securities Agent State Law Examination | Series 63 | 08/29/1997 |

**Broker Qualifications**



### Industry Exams this Broker has Passed, continued

Additional information about the above exams or other exams FINRA administers to brokers and other securities professionals can be found at www.finra.org/brokerqualifications/registeredrep/.

©2026 FINRA. All rights reserved. Report about Brian M. Moran.

**Broker Qualifications**



## Professional Designations

This section details that the representative has reported **0** professional designation(s).

No information reported.

Only professional designations listed in Question 8 of the Form U4 will appear in this section if the appropriate box is checked and verified by the issuing organization at the time of the filing. Learn more about eligible designations at IARD and NASAA.

⬨2026 FINRA. All rights reserved. Report about Brian M. Moran.



# Registration and Employment History

## Registration History

The broker previously was registered with the following firms:

| | Registration Dates | Firm Name | CRD# | Branch Location |
|---|---|---|---|---|
| B | 06/2020 - 11/2025 | SHARENETT SECURITIES LLC | 151011 | NEW YORK, NY |
| B | 08/2023 - 11/2025 | VEX SECURITIES | 317371 | San Jose, CA |
| B | 12/2022 - 12/2024 | LINQTO CAPITAL | 314557 | San Jose, CA |
| B | 04/2023 - 09/2024 | MCG SECURITIES LLC | 163144 | WAYNE, PA |
| IA | 06/2021 - 09/2024 | JULEX CAPITAL MANAGEMENT | 166053 | Matthews, NC |
| B | 04/2023 - 06/2024 | BOSONIC SECURITIES | 317012 | San Rafeal, CA |
| B | 01/2023 - 11/2023 | SECURRENCY DIGITAL TRADING | 317696 | Durham, NC |
| IA | 03/2022 - 09/2023 | LINQTO INVESTMENT MANAGEMENT | 318630 | SAN JOSE, CA |
| IA | 08/2022 - 09/2023 | ALPHA GROWTH MANAGEMENT LLC | 316760 | NEWPORT BEACH, CA |
| B | 10/2021 - 04/2023 | SECURRENCY SECURITIES INC. | 309087 | BEDFORD HILLS, NY |
| B | 07/2022 - 01/2023 | HANCOCK WHITNEY INVESTMENT SERVICES INC. | 40637 | NEW ORLEANS, LA |
| B | 03/2021 - 10/2022 | STARTENGINE PRIMARY LLC | 291773 | BURBANK, CA |
| B | 11/2021 - 03/2022 | REALTO SECURITIES, LLC | 313056 | Overland Park, KS |
| IA | 12/2019 - 07/2020 | LION STREET ADVISORS, LLC | 167610 | Austin, TX |
| B | 05/2019 - 06/2019 | AXIS CAPITAL USA, LLC | 293368 | NEW YORK, NY |
| IA | 09/2018 - 12/2018 | BIONDO INVESTMENT ADVISORS LLC | 130105 | MILFORD, PA |
| B | 09/2014 - 07/2018 | STERLING CAPITAL DISTRIBUTORS, LLC | 103934 | CHARLOTTE, NC |
| IA | 07/2014 - 06/2018 | STERLING CAPITAL MANAGEMENT LLC | 135405 | CHARLOTTE, NC |
| IA | 07/2007 - 07/2014 | TIAA-CREF ADVICE AND PLANNING SERVICES | 20472 | CHARLOTTE, NC |
| B | 01/2007 - 07/2014 | TEACHERS PERSONAL INVESTORS SERVICES, INC. | 36130 | CHARLOTTE, NC |



# Registration and Employment History

## Registration History, continued

The broker previously was registered with the following firms:

| | Registration Dates | Firm Name | CRD# | Branch Location |
|---|---|---|---|---|
| B | 01/2007 - 07/2014 | TIAA-CREF INDIVIDUAL & INSTITUTIONAL SERVICES, LLC | 20472 | CHARLOTTE, NC |
| B | 09/2004 - 12/2006 | WACHOVIA CAPITAL MARKETS, LLC | 126292 | CHARLOTTE, NC |
| B | 02/2002 - 09/2004 | NORTHWESTERN MUTUAL INVESTMENT SERVICES, LLC | 2881 | MILWAUKEE, WI |
| IA | 06/2002 - 06/2002 | NORTHWESTERN MUTUAL INVESTMENT SERVICES,LLC | 2881 | MILWAUKEE, WI |
| B | 03/2000 - 01/2002 | VALIC FINANCIAL ADVISORS, INC. | 42803 | HOUSTON, TX |
| B | 01/1999 - 02/2000 | FLEETBOSTON ROBERTSON STEPHENS INC. | 41271 | SAN FRANCISCO, CA |

## Employment History

This section provides up to 10 years of an individual broker's employment history as reported by the individual broker on the most recently filed Form U4.

**Please note that the broker is required to provide this information only while registered with FINRA or a national securities exchange and the information is not updated via Form U4 after the broker ceases to be registered. Therefore, an employment end date of "Present" may not reflect the broker's current employment status.**

| Employment | Employer Name | Position | Investment Related | Employer Location |
|---|---|---|---|---|
| 04/2021 - Present | Cicada Securities, LLC | Chief Compliance Officer, Chief Operating Officer and Principal | Y | Greenwich, CT, United States |
| 04/2021 - Present | Fundamental Interactions Neutron Direct, LLC | CEO/COO | Y | New York, NY, United States |
| 06/2018 - Present | MORAN CONSULTING | CONSULTANT | N | MATTHEWS, NC, United States |
| 04/2020 - 11/2025 | Sharenett Securities LLC | Financial & Operational Principal, General Securities Principal, Investment Banking | Y | New York, NY, United States |

# Registration and Employment History



## Employment History, continued

| Employment | Employer Name | Position | Investment Related | Employer Location |
|---|---|---|---|---|
| 10/2021 - 10/2025 | Vex Securities, LLC | Consultant-CCO, FinOp | Y | San Jose, CA, United States |
| 12/2024 - 07/2025 | Anthem Securities, LLC | CCO/FINOP | Y | Coral Gables, FL, United States |
| 05/2021 - 12/2024 | Linqto Capital, LLC | Consultant | Y | San Jose, CA, United States |
| 04/2023 - 09/2024 | MCG Securities, LLC | CCO | Y | Wayne, PA, United States |
| 01/2021 - 09/2024 | Julex Capital Management LLC | Chief Compliance Officer | Y | Wellesley, MA, United States |
| 01/2021 - 09/2024 | WB Compliance, LLC/MCG Securities, LLC | Consultant | Y | Newburyport, MA, United States |
| 11/2021 - 08/2024 | Linqto, Incorporated | Chief Compliance Officer | N | San Jose, CA, United States |
| 09/2021 - 06/2024 | Bosonic Securities, LLC | Consultant-Chief Compliance Officer/FinOp-NMA | Y | San Francisco, CA, United States |
| 07/2020 - 01/2024 | FLX Distributors, LLC | Consultant | N | Basking Ridge, NJ, United States |
| 10/2021 - 12/2023 | Securrency Digital Trading (S3) | Chief Compliance Officer | Y | Bedford Hills, NY, United States |
| 02/2022 - 09/2023 | Linqto Investment Management, LLC | CCO | Y | San Jose, CA, United States |
| 10/2021 - 06/2023 | Securrency Securities (S2) | Chief Compliance Officer | Y | Bedford Hills, NY, United States |
| 07/2022 - 01/2023 | HANCOCK WHITNEY INVESTMENT SERVICES, INC. | CHIEF COMPLIANCE OFFICER | Y | NEW ORLEANS, LA, United States |
| 02/2021 - 10/2022 | StartEngine Primary, LLC | Financial & Operational Principal | Y | Burbank, CA, United States |
| 02/2021 - 03/2022 | Realto Securities, LLC | Chief Compliance Officer and Financial & Operational Principal | Y | Overland Park, KS, United States |
| 04/2019 - 12/2021 | WELLS FARGO | OPERATIONAL RISK CONSULTANT | Y | CHARLOTTE, NC, United States |

## Registration and Employment History



## Employment History, continued

| Employment | Employer Name | Position | Investment Related | Employer Location |
|---|---|---|---|---|
| 07/2019 - 09/2021 | COINSQUARE LLC | FINANCIAL AND OPERATIONS PRINCIPAL, CHIEF COMPLIANCE OFFICER, AML OFFICER AND SECURITIES PRINCIPAL | Y | TORONTO, Canada |
| 12/2019 - 06/2020 | LION STREET ADVISORS | INVESTMENT ADVISOR REPRESENTATIVE | Y | AUSTIN, TX, United States |
| 01/2019 - 06/2019 | AXIS CAPITAL USA, LLC | SUPERVISORY PRINCIPAL AND FINANCIAL OPERATIONS PRINCIPAL | Y | New York, NY, United States |
| 01/2019 - 06/2019 | OYSTER CONSULTING, LLC | DIRECTOR (CONSULTING) | N | GLEN ALLEN, VA, United States |
| 08/2018 - 12/2018 | BIONDO INVESTMENT ADVISORS, LLC | CHIEF COMPLIANCE OFFICER | Y | MILFORD, PA, United States |
| 09/2014 - 07/2018 | STERLING CAPITAL DISTRIBUTORS, LLC | REGISTERED REPRESENTATIVE | Y | CHARLOTTE, NC, United States |
| 07/2014 - 07/2018 | STERLING CAPITAL MANAGEMENT | Chief Compliance Officer/Executive Officer | Y | CHARLOTTE, NC, United States |

## Other Business Activities

This section includes information, if any, as provided by the broker regarding other business activities the broker is currently engaged in either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise. This section does not include non-investment related activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.

1. Name: Moran Consulting, Address: 4200 Moss Creek Court, Matthews, NC 28105, Investment Related: Not investment related ; O6/2018, Position: Director, Duties: Provide consulting services, Hours: Approximately 30 hours a month; 10-12 hours a month during trading hours, Fundamental Interactions Neutron Direct, LLC",Is Investment Related,"115 West 30th Street, Fourth Floor Unit 401, New York, NY, 10001, Direct Market Access Platform Trading, CEO/CCO, Start 3/1/2021,14 hours per month,0 hours per month during trading hours, Other Compensation, Consulting Fees Fixed as per contract

◆2026 FINRA. All rights reserved. Report about Brian M. Moran.

**Registration and Employment History**



## Other Business Activities, continued

2. Cicada Securities, LLC",Is Investment Related,"289 Greenwich Avenue, Floor 2, Greenwich, CT, 06830, United States",Operations
Support,COO/CCO,10/2/2021,16 hours per month,5 hours
per month during trading hours,Other Compensation,Consultant Fees as negotiated

## Disclosure Events



**What you should know about reported disclosure events:**

1.  All individuals registered to sell securities or provide investment advice are required to disclose customer complaints and arbitrations, regulatory actions, employment terminations, bankruptcy filings, and criminal or civil judicial proceedings.

2.  **Certain thresholds must be met before an event is reported to CRD, for example:**
    o   A law enforcement agency must file formal charges before a broker is required to disclose a particular criminal event.
    o   A customer dispute must involve allegations that a broker engaged in activity that violates certain rules or conduct governing the industry and that the activity resulted in damages of at least $5,000.
    o

3.  **Disclosure events in BrokerCheck reports come from different sources:**
    o   As mentioned at the beginning of this report, information contained in BrokerCheck comes from brokers, brokerage firms and regulators. When more than one of these sources reports information for the same disclosure event, all versions of the event will appear in the BrokerCheck report. The different versions will be separated by a solid line with the reporting source labeled.
    o

4.  **There are different statuses and dispositions for disclosure events:**
    o   A disclosure event may have a status of *pending, on appeal,* or *final.*
        ▪   A "pending" event involves allegations that have not been proven or formally adjudicated.
        ▪   An event that is "on appeal" involves allegations that have been adjudicated but are currently being appealed.
        ▪   A "final" event has been concluded and its resolution is not subject to change.
    o   A final event generally has a disposition of *adjudicated, settled* or *otherwise resolved.*
        ▪   An "adjudicated" matter includes a disposition by (1) a court of law in a criminal or civil matter, or (2) an administrative panel in an action brought by a regulator that is contested by the party charged with some alleged wrongdoing.
        ▪   A "settled" matter generally involves an agreement by the parties to resolve the matter. Please note that brokers and brokerage firms may choose to settle customer disputes or regulatory matters for business or other reasons.
        ▪   A "resolved" matter usually involves no payment to the customer and no finding of wrongdoing on the part of the individual broker. Such matters generally involve customer disputes.

**For your convenience, below is a matrix of the number and status of disclosure events involving this broker. Further information regarding these events can be found in the subsequent pages of this report. You also may wish to contact the broker to obtain further information regarding these events.**

|  | Pending | Final | On Appeal |
| --- | --- | --- | --- |
| Regulatory Event | 0 | 1 | 0 |



## Disclosure Event Details

When evaluating this information, please keep in mind that a disclosure event may be pending or involve allegations that are contested and have not been resolved or proven. The matter may, in the end, be withdrawn, dismissed, resolved in favor of the broker, or concluded through a negotiated settlement for certain business reasons (e.g., to maintain customer relationships or to limit the litigation costs associated with disputing the allegations) with no admission or finding of wrongdoing.

This report provides the information exactly as it was reported to CRD and therefore some of the specific data fields contained in the report may be blank if the information was not provided to CRD.

### Regulatory - Final

This type of disclosure event may involve (1) a final, formal proceeding initiated by a regulatory authority (e.g., a state securities agency, self-regulatory organization, federal regulatory such as the Securities and Exchange Commission, foreign financial regulatory body) for a violation of investment-related rules or regulations; or (2) a revocation or suspension of a broker's authority to act as an attorney, accountant, or federal contractor.

**Disclosure 1 of 1**

| | |
|---|---|
| **Reporting Source:** | Regulator |
| **Regulatory Action Initiated By:** | FINRA |
| **Sanction(s) Sought:** | Other: N/A |
| **Date Initiated:** | 10/09/2025 |
| **Docket/Case Number:** | 2022073912801 |
| **Employing firm when activity occurred which led to the regulatory action:** | StartEngine Primary LLC. |
| **Product Type:** | No Product |
| **Allegations:** | Without admitting or denying the findings, Moran consented to the sanctions and to the entry of findings that he allowed his member firm to conduct a securities business while failing to maintain its minimum required net capital and failed to file timely notifications of its net capital deficiencies. The findings stated that Moran, as the firm's FinOP, was responsible for calculating its net capital and filing the firm's FOCUS reports. Moran also had authority to suspend the firm's business operations if its net capital fell below its required minimum. Over a three-month period, the firm's parent approved three corporate resolutions to contribute capital (via debt forgiveness) to the firm. Moran was aware that these resolutions were backdated. Moran approved the firm's net capital computations based on the backdated dates of these resolutions rather than the dates of actual execution, |

©2026 FINRA. All rights reserved. Report about Brian M. Moran.



resulting in the incorrect calculation of the firm's net capital. Moran also prepared and filed, on the firm's behalf, inaccurate FOCUS reports that misstated the firm's net capital. Moran was aware that the firm was below its minimum required net capital on 45 days in amounts up to approximately $2 million, yet permitted the firm to conduct a securities business during that time. Moran also failed to file any net capital deficiency notifications with FINRA and the SEC when the firm was below its minimum required net capital. Moran filed notifications on behalf of the firm between 51 and 54 days after he became aware of the remaining deficiencies. The findings also stated that Moran caused the firm to inaccurately calculate its customer reserve amounts and not maintain a sufficient balance in its customer reserve account. Moran was responsible for the firm's weekly customer reserve calculation. However, Moran either failed to perform the reserve calculation or performed it incorrectly by treating customer deposits that the firm was waiting to clear as debits. Consequently, Moran caused the firm to fail to maintain a sufficient balance in its reserve account, resulting in deficiencies in amounts up to approximately $220,000. Moran also caused the firm to misstate its customer reserves on its books and records and to file inaccurate FOCUS reports.

**Current Status:** Final

**Resolution:** Acceptance, Waiver & Consent(AWC)

**Does the order constitute a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?** No

**Resolution Date:** 10/09/2025

**Sanctions Ordered:** Civil and Administrative Penalty(ies)/Fine(s)
Requalification
Suspension

**If the regulator is the SEC, CFTC, or an SRO, did the action result in a finding of a willful violation or failure to supervise?** No

©2026 FINRA. All rights reserved. Report about Brian M. Moran.



**(1) willfully violated any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board, or to have been unable to comply with any provision of such Act, rule or regulation?**

**(2) willfully aided, abetted, counseled, commanded, induced, or procured the violation by any person of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board? or**

◆2026 FINRA. All rights reserved. Report about Brian M. Moran.



**(3) failed reasonably to supervise another person subject to your supervision, with a view to preventing the violation by such person of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any such Acts, or any of the rules of the Municipal Securities Rulemaking Board?**

**Sanction 1 of 1**

| | |
|---|---|
| **Sanction Type:** | Suspension |
| **Capacities Affected:** | a Financial and Operations Principal capacity |
| **Duration:** | Three months |
| **Start Date:** | 11/03/2025 |
| **End Date:** | 02/02/2026 |

**Requalification 1 of 1**

| | |
|---|---|
| **Requalification Type:** | Requalification by Exam |
| **Length of time given to requalify:** | |
| **Type of exam required :** | Financial and Operations Principal |
| **Has condition been satisfied:** | No |

**Monetary Sanction 1 of 1**

| | |
|---|---|
| **Monetary Related Sanction:** | Civil and Administrative Penalty(ies)/Fine(s) |
| **Total Amount:** | $10,000.00 |
| **Portion Levied against individual:** | $10,000.00 |

©2026 FINRA. All rights reserved. Report about Brian M. Moran.



**Payment Plan:**

**Is Payment Plan Current:**

**Date Paid by individual:**

**Was any portion of penalty waived?**     No

**Amount Waived:**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Reporting Source:**     Broker

**Regulatory Action Initiated By:**     FINRA

**Sanction(s) Sought:**     Other: N/A

**Date Initiated:**     10/09/2025

**Docket/Case Number:**     2022073912801

**Employing firm when activity occurred which led to the regulatory action:**     StartEngine Primary LLC.

**Product Type:**     No Product

**Allegations:**     Without admitting or denying the findings, Moran consented to the sanctions and to the entry of findings that he allowed his member firm to conduct a securities business while failing to maintain its minimum required net capital and failed to file timely notifications of its net capital deficiencies. The findings stated that Moran, as the firm's FinOP, was responsible for calculating its net capital and filing the firm's FOCUS reports. Moran also had authority to suspend the firm's business operations if its net capital fell below its required minimum. Over a three-month period, the firm's parent approved three corporate resolutions to contribute capital (via debt forgiveness) to the firm. Moran was aware that these resolutions were backdated. Moran approved the firm's net capital computations based on the backdated dates of these resolutions rather than the dates of actual execution, resulting in the incorrect calculation of the firm's net capital. Moran also prepared and filed, on the firm's behalf, inaccurate FOCUS reports that misstated the firm's net capital. Moran was aware that the firm was below its minimum required net capital on 45 days in amounts up to approximately $2 million, yet permitted the firm to conduct a securities business during that time. Moran also failed to file any net capital deficiency notifications with FINRA and the SEC when the firm was below its minimum required net capital. Moran filed notifications on behalf of the firm between 51 and 54 days after he became aware of the remaining deficiencies. The

©2026 FINRA. All rights reserved. Report about Brian M. Moran.     19



findings also stated that Moran caused the firm to inaccurately calculate its customer reserve amounts and not maintain a sufficient balance in its customer reserve account. Moran was responsible for the firm's weekly customer reserve calculation. However, Moran either failed to perform the reserve calculation or performed it incorrectly by treating customer deposits that the firm was waiting to clear as debits. Consequently, Moran caused the firm to fail to maintain a sufficient balance in its reserve account, resulting in deficiencies in amounts up to approximately $220,000. Moran also caused the firm to misstate its customer reserves on its books and records and to file inaccurate FOCUS reports.

**Current Status:** Final

**Resolution:** Acceptance, Waiver & Consent(AWC)

**Does the order constitute a final order based on violations of any laws or regulations that prohibit fraudulent, manipulative, or deceptive conduct?** No

**Resolution Date:** 10/09/2025

**Sanctions Ordered:** Civil and Administrative Penalty(ies)/Fine(s)
Requalification
Suspension

**Sanction 1 of 1**

**Sanction Type:** Suspension

**Capacities Affected:** a Financial and Operations Principal capacity

**Duration:** Three months

**Start Date:** 11/03/2025

**End Date:** 02/02/2026

**Requalification 1 of 1**

**Requalification Type:** Requalification by Exam

**Length of time given to requalify:**

**Type of exam required :** Financial and Operations Principal

**Has condition been satisfied:** No

**Monetary Sanction 1 of 1**

◆2026 FINRA. All rights reserved. Report about Brian M. Moran.                                                    20



**Monetary Related Sanction:** Civil and Administrative Penalty(ies)/Fine(s)

**Total Amount:** $10,000.00

**Portion Levied against individual:** $10,000.00

**Payment Plan:**

**Is Payment Plan Current:**

**Date Paid by individual:**

**Was any portion of penalty waived?** No

**Amount Waived:**

2026 FINRA. All rights reserved. Report about Brian M. Moran. 

**End of Report**



**This page is intentionally left blank.**