**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| A.O.H. DRIEDIJK HOLDING B.V. AND JAIMIN BHATT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM SARRIS, JOSEPH A. ENDOSO, DAVID PAUL, BRIAN MORAN, KARIM NURANI, MARGARET SLEMMER, VICTOR JIANG, ALISON DAVIS, NORMAN REED, ADAM T. HENDERSON, AND RAINMAKER SECURITIES, LLC, <br><br> Defendants. | Case No.: 1:25-CV-05643-LAK <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANT MARGARET SLEMMER'S SUPPLEMENTAL MEMORANDUM OF
LAW IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS
ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

LEGAL STANDARD.................................................................................................... 1

ARGUMENT.............................................................................................................. 2

I.      THE SECTION 10(b) CLAIMS FAIL AS TO SLEMMER (COUNTS I-II) ................... 2

     A.      The AC Identifies No Statement Made By Slemmer.............................................. 2

     B.      The AC Identifies No Deceptive Act By Slemmer................................................ 4

     C.      The AC Does Not Plead Scienter As To Slemmer ................................................ 5

II.      THE SECTION 20(a) CLAIM FAILS AS TO SLEMMER (COUNT III) ....................... 6

III.      THE SECTION 5 CLAIM FAILS AS TO SLEMMER (COUNT IV) ............................ 7

IV.      THE SECTION 7 CLAIM FAILS AS TO SLEMMER (COUNT V).............................. 8

V.      THE TEXAS SECURITIES ACT CLAIM FAILS AS TO SLEMMER (COUNT VI)................................................................................................. 8

VI.      THE UCL CLAIM FAILS AS TO SLEMMER (COUNT VII) ..................................... 9

CONCLUSION.......................................................................................................... 9

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Aegean Marine Petroleum Network Sec. Litig.*,
  529 F. Supp. 3d 111 (S.D.N.Y. 2021)........................................................................................1, 2

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009)............................................................................................1

*In re Banco Bradesco S.A. Sec. Litig.*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017)........................................................................................5, 7

*Billitteri v. Sec. Am.*,
  2010 WL 6785484 (N.D. Tex. July 26, 2010) ...............................................................................8

*In re Cannavest Corp. Sec. Litig.*,
  307 F. Supp. 3d 222 (S.D.N.Y. 2018)...........................................................................................3

*Carey v. J.A.K.'s Puppies*,
  763 F. Supp. 3d 952 (C.D. Cal. 2025) ..........................................................................................1

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  750 F.3d 227 (2d Cir. 2014)...........................................................................................................6

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JPMorgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)...........................................................................................................5

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  258 F. Supp. 2d 576 (S.D. Tex. 2003) ...........................................................................................8

*In re Glob. Cord Blood Corp. Sec. Litig.*,
  820 F. Supp. 3d 221 (S.D.N.Y. 2026).............................................................................................4

*IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*,
  2013 WL 1223844 (S.D.N.Y. Mar. 27, 2013) ................................................................................4

*Janus Cap. Grp. v. First Derivative Traders*,
  564 U.S. 135, 131 S. Ct. 2296 (2011).............................................................................................2

*In re JUUL Labs Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  497 F. Supp. 3d 552 (N.D. Cal. 2020) ...........................................................................................9

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)............................................................................................................5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mabon, Nugent & Co. v. Borey*,
127 B.R. 727 (S.D.N.Y. 1991)........................................................................................7

*In re Marsh & McLennan Cos. Sec. Litig.*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006)............................................................................3

*Maso Cap. Invs. Ltd. v. E-House (China) Holdings Ltd.*,
2024 WL 2890968 (2d Cir. June 10, 2024) ...................................................................2

*O'Connor v. Uber Techs.*,
2013 WL 6354534 (N.D. Cal. Dec. 5, 2013)..................................................................9

*In re Parmalat Sec. Litig.*,
479 F. Supp. 2d 332 (S.D.N.Y. 2007).............................................................................3

*Pinter v. Dahl*,
486 U.S. 622, 108 S. Ct. 2063 (1988).............................................................................7

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
11 F.4th 90 (2d Cir. 2021) ..............................................................................................4

*In re Refco Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007).............................................................................2

*In re Richmont Cap. Partners VII, LP*,
2026 WL 1035008 (Bankr. N.D. Tex. Apr. 15, 2026).....................................................1

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
915 F. Supp. 2d 450 (S.D.N.Y. 2013).............................................................................6

*In re ShengdaTech Sec. Litig.*,
2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014)..............................................................3, 6

*In re Smith Barney Transfer Agent Litig.*,
884 F. Supp. 2d 152 (S.D.N.Y. 2012).............................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308, 127 S. Ct. 2499 (2007).............................................................................5

*Yi Xiang v. Inovalon Holdings, Inc.*,
254 F. Supp. 3d 635 (S.D.N.Y. 2017).............................................................................7

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................................5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Tex. Gov't Code §§ 4008.051-.052, .055 ..................................................................................8, 9

## PRELIMINARY STATEMENT

Margaret Slemmer's name appears in the Amended Complaint (the "AC") six times. Twice identifying her as a Defendant, twice stating she was a Linqto director, and twice noting she lives in California. That's it. The AC alleges no facts showing that Slemmer made any statement, took any action, received any information, or controlled anyone or anything at any time. She should never have been included in this case, and the claims against her should be dismissed.

## LEGAL STANDARD

To survive dismissal, a complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).[1] Labels, conclusions, and "naked assertion[s]" devoid of "further factual enhancement" do not suffice. *Id.*

Claims sounding in fraud face more demanding requirements. A claim under Section 10(b) of the Securities Exchange Act of 1934 must satisfy both Rule 9(b) and the heightened pleading requirements of the Private Securities Litigation Reform Act (the "PSLRA"). *In re Aegean Marine Petroleum Network Sec. Litig.*, 529 F. Supp. 3d 111, 147 (S.D.N.Y. 2021). And state-law claims sounding in fraud must also satisfy Rule 9(b). *See In re Richmont Cap. Partners VII, LP*, 2026 WL 1035008, at *24 (Bankr. N.D. Tex. Apr. 15, 2026) (TSA claim); *Carey v. J.A.K.'s Puppies*, 763 F. Supp. 3d 952, 990 (C.D. Cal. 2025) (UCL claim).

Importantly here, "[w]hen fraud is alleged against multiple defendants, a plaintiff must set

---

[1] "¶" refers to paragraphs of the AC. The "Consolidated Motion" refers to the Memorandum of Law in Support of the Moving Defendants' Consolidated Motion to Dismiss the First Amended Complaint, to which Slemmer joins in the legal arguments set forth in Sections I-VI. Capitalized terms not defined herein have the same meaning as in the AC. Unless otherwise noted, all emphasis is added, and all internal citations, quotation marks, and alterations are omitted. Slemmer accepts Plaintiffs' well-pleaded allegations as true solely for purposes of this motion.

forth separately the acts complained of by each defendant" and "may not simply clump defendants together in vague allegations." *In re Refco Sec. Litig.*, 503 F. Supp. 2d 611, 641 (S.D.N.Y. 2007). A complaint's "failure to isolate the key allegations against each defendant supports dismissal under the standards set forth in *Twombly* and *Iqbal.*" *Aegean*, 529 F. Supp. 3d at 147.

## ARGUMENT

### I.    THE SECTION 10(b) CLAIMS FAIL AS TO SLEMMER (COUNTS I-II)

For the reasons set forth in the Consolidated Motion (*see* Sections I-V), Plaintiffs' Section 10(b) claims fail as to all Defendants. But the claims against Slemmer fail for another, more obvious reason: The AC does not allege that she made any challenged statement, committed any deceptive act, or acted with scienter. Each pleading failure independently requires dismissal.

### A.    The AC Identifies No Statement Made By Slemmer

Rule 10b-5(b) reaches only the "maker" of a false or misleading statement—the person with "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Cap. Grp. v. First Derivative Traders*, 564 U.S. 135, 142, 131 S. Ct. 2296, 2302 (2011). A person who lacks that authority does not make the statement, even if she "suggest[s] what to say." *Id.*

The AC never attributes any statement to Slemmer. Instead, it attributes the challenged statements to Linqto (through its website, smartphone application, marketing materials, and press releases) and to Sarris (through press releases). ¶ 73. The AC does not identify a single statement that Slemmer made or signed, much less allege that she had ultimate authority over a challenged statement's content or dissemination. Because the AC attributes no statement to Slemmer, there is no statement of hers that an omission could render misleading. And Rule 10b-5(b) does not impose liability for "pure omissions." *Maso Cap. Invs. Ltd. v. E-House (China) Holdings Ltd.*, 2024 WL 2890968, at *4 (2d Cir. June 10, 2024) (citing *Macquarie Infrastructure v. Moab Partners*, 601

U.S. 257, 263-64, 144 S. Ct. 885 (2024)).

Plaintiffs cannot fill that void with boilerplate allegations that all ten "Individual Defendants," "[d]ue to" their "high-level positions," necessarily controlled every Linqto communication. ¶¶ 32, 73. That is a bare conclusion, not a well-pleaded fact. Moreover, even if the "extremely limited" group pleading doctrine survived *Janus*, it could apply only where an individual participated in preparing the challenged statements or was directly involved in the company's day-to-day management. *See In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 242 (S.D.N.Y. 2018); *In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 340 (S.D.N.Y. 2007) ("Alleging direct involvement in the company's everyday business is critical to support the presumption."). The AC pleads neither about Slemmer. It declares that every "Control Person Defendant" managed Linqto, ¶ 176, but offers not one supporting fact as to Slemmer. And when the AC identifies the individuals allegedly "intimately involved" in preparing, reviewing, approving, or disseminating Linqto's public statements, it names *other* Individual Defendants— but not Slemmer.

Plaintiffs cannot attribute every corporate statement to a director based on her title alone. *See Cannavest*, 307 F. Supp. 3d at 242-43; *In re ShengdaTech Sec. Litig.*, 2014 WL 3928606, at *10 (S.D.N.Y. Aug. 12, 2014) ("[T]he Complaint fails to allege facts tending to show that [defendants], who are outside directors, exceeded those roles and became involved in the everyday business of [the company]."); *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 479 (S.D.N.Y. 2006) ("Plaintiffs fail to allege with particularity that the Independent Directors were sufficiently involved in the day-to-day operations of [the company] or drafting of company statements to attribute statements in unsigned documents to the Independent Directors."). Count II therefore fails as to Slemmer.

3

### B.    The AC Identifies No Deceptive Act By Slemmer

Rule 10b-5(a) and (c) requires deceptive conduct by the defendant herself. Thus, the complaint "must specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021). "Allegations that describe a party's participation in a scheme, but do not attribute a deceptive or manipulative act to the party, have been held not to give rise to a claim of scheme liability." *In re Glob. Cord Blood Corp. Sec. Litig.*, 820 F. Supp. 3d 221, 255 (S.D.N.Y. 2026).

Here, the AC never identifies any deceptive act by Slemmer. It lists six acts supposedly undertaken by "Defendants" collectively, including permitting non-accredited investors to use the Platform, authorizing undisclosed markups, misrepresenting the ownership structure, and directing regulatory noncompliance. ¶ 162. But the AC does not allege that Slemmer performed, directed, or even participated in any of those acts. It does not allege that she designed the Platform, set a price, approved a markup, directed marketing, sold an investment, disseminated a statement, or took any other action in furtherance of the alleged scheme. All it does is declare that "Defendants together and individually took the actions set forth herein," ¶ 163, without identifying any action taken by Slemmer. That is exactly the sort of group pleading Rule 9(b) forbids.

Board membership is not deceptive conduct. Accordingly, where a complaint alleges no specific act by a director beyond her service on the board, there is "no there there" for purposes of scheme liability. *IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 1223844, at *14 (S.D.N.Y. Mar. 27, 2013). Count I therefore fails as to Slemmer.

4

### C.    The AC Does Not Plead Scienter As To Slemmer

The Section 10(b) claims independently fail because the AC does not plead that Slemmer acted with scienter. The PSLRA requires particularized facts giving rise to a "strong inference" that each defendant acted with an "intent to deceive, manipulate, or defraud," or with recklessness approximating actual intent. 15 U.S.C. § 78u-4(b)(2)(A); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319, 323-24, 127 S. Ct. 2499, 2507, 2509-10 (2007). Scienter must be pleaded separately as to each defendant; "guilt by association is impermissible." *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 664 (S.D.N.Y. 2017).

The AC pleads no particularized facts suggesting Slemmer acted with scienter. It alleges collectively that the "Individual Defendants" had a financial motive to charge excessive markups and "knew of and/or recklessly disregarded" undisclosed information. ¶¶ 130, 138. But the AC does not allege that Slemmer received any markup, commission, bonus, or other concrete personal benefit from the alleged fraud. A generalized interest in corporate profitability is not a cognizable motive. *See ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JPMorgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009); *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).

Nor does the AC allege conscious misbehavior or recklessness. Neither former employee (FE-1 or FE-2) is alleged to have communicated any concern to Slemmer. And although former CRO Zawrotny allegedly raised concerns with "executive management" and identified Endoso and Moran as participants in weekly risk meetings, the AC never alleges that he raised anything with Slemmer. ¶¶ 139-146. Those allegations may bear on what others knew, but they say nothing about Slemmer's state of mind.

The two legal memoranda do not bridge that gap. The AC alleges that they were provided to Sarris in 2023 and 2024, ¶¶ 95-96, 104-110, but not that either was provided to Slemmer or to any other member of the Board. Plaintiffs instead speculate that Defendants were "*likely* made

5

aware" of compliance issues during reviews associated with the proposed business combination. ¶ 149. But the PSLRA requires facts, not conjecture. *See In re Satyam Comput. Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 480 (S.D.N.Y. 2013) ("[T]here is nothing in the [complaint] to suggest that the [former directors and members of the audit committee] actually saw the letters, as they were addressed 'to the Company,' and Lead Plaintiffs do not allege that the Audit Committee received the letters"); *ShengdaTech*, 2014 WL 3928606, at *9 ("As courts in this Circuit have consistently held, unseen red flags cannot be heeded.").

Weaker still, the AC recounts hearsay that Sarris supposedly said the "Board or Company" had instructed him to stop marketing because "we are getting sued." ¶ 150. That ambiguous, secondhand statement does not identify Slemmer, say what she learned, when she learned it, or otherwise connect her to any challenged statement or deceptive act.

Because the AC pleads neither motive nor particularized facts showing conscious misbehavior or recklessness, Counts I and II fail as to Slemmer.

## II.     THE SECTION 20(a) CLAIM FAILS AS TO SLEMMER (COUNT III)

To state a claim under Section 20(a), Plaintiffs must plead a primary violation, control by the defendant, and culpable participation in the fraud. *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014). For Slemmer, the claim fails on all three grounds. As explained in the Consolidated Motion (*see* Sections I-V) and above, the AC pleads no primary violation. Nor does it plead control or culpable participation as to Slemmer.

The AC alleges only that Slemmer served on the Board, ¶ 175, before declaring collectively that every "Control Person Defendant" participated in Linqto's day-to-day management and controlled its conduct, ¶¶ 176-177. But director status and conclusory allegations of control do not suffice; Plaintiffs must plead facts showing that Slemmer "exercised actual control over the matters at issue." *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166-67 (S.D.N.Y. 2012);

6

*see Banco Bradesco*, 277 F. Supp. 3d at 670 (dismissing a control-person claim resting only on the defendant's title and committee membership). They plead none. The AC identifies no statement, transaction, sale, pricing decision, marketing decision, or other alleged misconduct that Slemmer controlled. And for the same reasons the AC fails to plead scienter, it alleges no facts showing that she culpably participated in any fraud. Count III therefore fails as to Slemmer.

## III.    THE SECTION 5 CLAIM FAILS AS TO SLEMMER (COUNT IV)

The Consolidated Motion explains why Count IV fails as to all Defendants (*see* Section VI.A). As to Slemmer, the claim has another, more basic defect: The AC does not allege that she sold or solicited the sale of any security.

Section 12(a)(1) of the Securities Act of 1933—the remedy Plaintiffs invoke for the alleged Section 5 violations—reaches only a person who passed title to the plaintiff or "successfully solicit[ed] the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter v. Dahl*, 486 U.S. 622, 647, 108 S. Ct. 2063, 2078 (1988). The AC alleges neither as to Slemmer. It does not allege that she passed title to any security, communicated with either named Plaintiff, or solicited any purchase. Instead, it merely asserts that all ten "Individual Defendants" collectively directed the offerings, controlled pricing, and managed marketing and sales. ¶ 182. That conclusory recital does not make Slemmer a statutory seller. Count IV therefore fails as to her.  *See Yi Xiang v. Inovalon Holdings, Inc.*, 254 F. Supp. 3d 635, 646 (S.D.N.Y. 2017) (dismissing Section 12 claim where plaintiff "has not alleged the Individual Defendants sold or solicited the sale of securities, except to allege that they signed the Registration and were officers and directors of [the company]"); *Mabon, Nugent & Co. v. Borey*, 127 B.R. 727, 735 (S.D.N.Y. 1991) (holding that directors who merely authorize the sale of a company's securities "are quintessentially collateral participants; and *Pinter* teaches that this will not do").

7

## IV.    THE SECTION 7 CLAIM FAILS AS TO SLEMMER (COUNT V)

Count V also fails at the threshold because, as the Consolidated Motion explains, Section 7 of the Investment Company Act creates no private right of action (*see* Section VI.B). In any event, Section 7(a) regulates unregistered investment companies, and the AC does not allege that Slemmer was one.

The AC identifies Liquidshares and its Series—not Slemmer—as the supposed unregistered investment companies. ¶¶ 188-190. Its conclusory assertion that all ten "Individual Defendants" offered, sold, or delivered Series interests and directed their sale does not transform Slemmer into an investment company subject to Section 7(a). Count V therefore fails as to her.

## V.    THE TEXAS SECURITIES ACT CLAIM FAILS AS TO SLEMMER (COUNT VI)

The Consolidated Motion explains why Count VI fails for lack of any nexus between the named Plaintiffs' purchases and Texas (*see* Section VI.C.1). And Plaintiffs' theory under Section 4008.052 of the Texas Securities Act fails because, as explained above, the AC attributes no statements or deceptive acts to Slemmer.  But the claim also fails as to Slemmer for a simpler reason: The AC does not allege that she sold securities to Plaintiffs or controlled anyone who did.

The Texas Securities Act imposes primary liability on the person who offered or sold the security to the plaintiff. *See* Tex. Gov't Code §§ 4008.051-.052. But the AC does not allege that Slemmer passed title, solicited either named Plaintiff, communicated with either of them, or otherwise participated in their purchases. Its bare assertion that all Individual Defendants offered and sold securities, ¶ 195, does not suffice. *See Billitteri v. Sec. Am.*, 2010 WL 6785484, at *7-8 (N.D. Tex. July 26, 2010) (dismissing TSA claim where the complaint "state[d] in conclusory fashion that all of the [defendants] 'participated in the drafting, preparation, approval, due diligence and/or dissemination of various materially false and misleading statements'"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 644 (S.D. Tex. 2003)

8

(dismissing TSA claim where "Lead Plaintiff ha[d] not alleged facts demonstrating privity between Outside Directors and [plaintiff] and ha[d] not shown that Outside Directors sold or actively solicited the sale of securities to [plaintiff]").

Plaintiffs' control-person theory fares no better. Section 4008.055 requires facts showing that Slemmer controlled the seller, buyer, or issuer. But the AC alleges only that she served on Linqto's Board; it identifies no seller, buyer, or issuer she actually controlled, and no role she played in either named Plaintiff's transaction. Just as with Section 20(a), a corporate title followed by collective recitals of control does not suffice. Count VI therefore fails as to Slemmer.

## VI.    THE UCL CLAIM FAILS AS TO SLEMMER (COUNT VII)

The Consolidated Motion establishes that California's Unfair Competition Law ("UCL") does not apply to securities transactions (*see* Section VI.C.2). But even apart from that threshold defect, the AC alleges no unlawful or unfair conduct by Slemmer.

Plaintiffs' two UCL theories fail for different but straightforward reasons. The "unlawful" theory is derivative of Plaintiffs' other claims and fails with them. The "unfair" theory requires personal participation in the challenged conduct; the UCL does not impose liability on a director based on status alone. *See In re JUUL Labs Mktg., Sales Pracs. & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 608-09 (N.D. Cal. 2020); *O'Connor v. Uber Techs.*, 2013 WL 6354534, at \*18 (N.D. Cal. Dec. 5, 2013). Yet the AC identifies no act by Slemmer—unlawful, unfair, or otherwise. Its collective allegations against "Defendants" cannot supply the missing personal participation. Count VII therefore fails as to her.

## CONCLUSION

For these reasons and those set forth in the Consolidated Motion, the AC's claims against Slemmer should be dismissed with prejudice.

9

Dated: July 30, 2026                                 **COOLEY LLP**

                                        By: */s/ Brian M. French*
                                             Brian M. French (5262498)
                                             Brian Golger (5899240)
                                             55 Hudson Yards
                                             New York, NY 10001-2163
                                             Tel: (212) 479-6000
                                             Fax: (212) 479-6275
                                             bfrench@cooley.com
                                             bgolger@cooley.com


                                             *Attorneys for Defendant Margaret Slemmer*

10