**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| A.O.H. DRIEDIJK HOLDING B.V. and JAIMIN BHATT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM SARRIS, JOSEPH A. ENDOSO, DAVID PAUL, BRIAN MORAN, KARIM NURANI, MARGARET SLEMMER, VICTOR JIANG, ALISON DAVIS, NORMAN REED, ADAM T. HENDERSON, and RAINMAKER SECURITIES, LLC, <br><br> Defendants. | Case No. 25-cv-05643-LAK-BCM |

**DEFENDANT RAINMAKER SECURITIES, LLC'S SUPPLEMENTAL**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**
**COUNTS I AND VII OF PLAINTIFFS' FIRST AMENDED COMPLAINT**[1]

James Kopecky
David Slovick
Kopecky Schumacher Rosenburg LLC
120 N. LaSalle Street, Suite 2000
Chicago, Illinois 60602
jkopecky@ksrlaw.com
dslovick@ksrlaw.com
(312) 380-6552

*Attorneys for Defendant Rainmaker*
*Securities, LLC*

---

[1] Rainmaker Securities, LLC is named in only two counts of the First Amended Complaint, Counts I and VII. This Supplemental Memorandum therefore addresses only those two counts. Rainmaker joins in Defendants' Motion to Dismiss the First Amended Complaint (Dkt. No. 126), and adopts and incorporates the arguments in the Memorandum of Law in Support of Defendants' Consolidated Motion to Dismiss the First Amended Complaint (Dkt. No. 131) in further support of Rainmaker's Motion to Dismiss Counts I and VII.

**ARGUMENT**

**I.    The Complaint Alleges No Particularized Wrongdoing by Rainmaker and Impermissibly Relies on Group Pleading.**

The Complaint's central pleading defect as to Rainmaker is that it never distinguishes Rainmaker's conduct from that of the ten Individual Defendants. It defines the "Individual Defendants and Defendant Rainmaker" collectively as "Defendants" (FAC ¶ 31), then attributes the alleged fraud to "Defendants" as an undifferentiated group, *id.* at p. 49. Such group pleading is insufficient. "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Allegations that merely identify a defendant by its status or affiliation, without linking that status or affiliation "in any specific way to any fraudulent misrepresentation or omission," are inadequate and require dismissal as to that defendant. *See id.* at 1248-49.

Every allegation directed at Rainmaker specifically is a description of its status or a routine fee — not of any fraudulent act:

- Paragraph 30 alleges only that Rainmaker "is a FINRA registered broker-dealer" and SIPC member that "provided supervisory services to Linqto in exchange for a fee." (FAC ¶ 30)
- Paragraph 21 alleges that a different defendant, Endoso, "was a registered agent and broker-dealer of Defendant Rainmaker . . . for which he was paid sales commissions." *Id.* ¶ 21. That is an allegation about Endoso, not about any conduct by Rainmaker.
- Paragraph 62 alleges that Linqto paid Rainmaker a supervisory fee. *Id.* ¶ 62.

The remaining Rainmaker references are cast entirely in the collective. Paragraph 31 supplies only the defined term. *Id.* ¶ 31. Paragraph 32 grounds knowledge and control in "the Individual Defendants' high-level positions at the Company" — a category that, by the Complaint's own definition, excludes Rainmaker. *Id.* ¶ 32. And the conduct said to comprise the "scheme" in Count I — permitting non-accredited investors onto the platform, authorizing

2

undisclosed markups, misrepresenting the ownership of the private securities, and failing to implement anti-money-laundering procedures — is Linqto's platform conduct, none of which is specifically alleged to have been performed by Rainmaker. *Id.* ¶ 162. Because the Complaint pleads no act by Rainmaker "with particularity," and instead relies on "[g]eneral allegations not tied to the defendant[]," it fails Rule 9(b) and the PSLRA as to Rainmaker. *ATSI Communications, Inc.*, 493 F.3d at 102.

## II.  Count I Fails to State a Scheme Liability Claim Against Rainmaker.

### A.  The Complaint alleges no deceptive act by Rainmaker and impermissibly repackages misrepresentation allegations as a scheme.

Count I is brought under the scheme subsections of Rule 10b-5 — subsections (a) and (c) — not the misstatement subsection, (b). (FAC ¶ 160.) A plaintiff "may not seek to hold a defendant liable for misleading statements under subsections (a) and (c) by alleging that the defendant is liable for the misleading statements because he or she was a participant in a scheme through which the statements were made." *Securities and Exchange Commission v. Rio Tinto plc*, 41 F.4th 47, 55 (2d Cir. 2022).

That is precisely this case. The  core conduct underlying Count I  is the alleged concealment of markups and fees and the misrepresentation of the ownership structure of the private securities (FAC ¶¶ 161-62) — the same conduct  forming the misstatement claim in Count II. Yet Rainmaker is not even named in Count II, which is pleaded against the Individual Defendants alone. Providing "supervisory services to Linqto in exchange for a fee," (FAC ¶ 30), is not a deceptive or manipulative act. Count I therefore fails.

### B.  The Complaint cannot plead reliance on any deceptive act by Rainmaker.

Scheme liability also fails for an independent reason: reliance. "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action,"

3

and the conduct of a secondary actor "must satisfy each of the elements or preconditions for liability." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 158, 159 (2008). Where a defendant's asserted deceptive acts "were not communicated to the public," plaintiffs "cannot show reliance upon any of [the defendant's] actions except in an indirect chain that [courts] find too remote for liability." *See id.* at 159. It is not enough that the end result of Linqto's conduct reaches investors through another entity's representations: "the mere fact that the ultimate result of a secondary actor's deceptive course of conduct is communicated to the public through a company's financial statements is insufficient to show reliance on the secondary actor's *own* deceptive conduct." *Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 159 (2d Cir. 2010).

The Complaint alleges that investors relied on statements made on Linqto's platform, website, and marketing materials — not on anything said or done by Rainmaker, whose back-office "supervisory services" did not make it  "necessary or inevitable" that Linqto would misrepresent its fees or the ownership of the securities to investors. *See id.* at 159-60. The deceptive representations were made by the platform operator, not by the service provider; the causal chain to Rainmaker is "too remote to satisfy the requirement of reliance." *Stoneridge Inv. Partners*, 160-61. Permitting the claim to proceed on these allegations would "revive in substance the implied cause of action against all aiders and abettors" that Congress reserved to the SEC. *Id.* at 162-63.

### C. The Complaint fails to plead a strong inference that rainmaker acted with scienter.

Even if the Complaint alleged a deceptive act by Rainmaker, Count I would still fail because it does not plead scienter as to Rainmaker with the particularity the PSLRA demands. To survive dismissal, the pleaded facts must give rise to a "strong" inference of scienter. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007). A "strong" inference of scienter "must

be more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent," assessed as to "each act or omission" of "the defendant." *Id.* at 309; 15 U.S.C.A. § 78u-4(b)(2)(A). In the Second Circuit, scienter may be pleaded by alleging facts showing "either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). The Complaint pleads neither as to Rainmaker.

### 1. *The Complaint alleges no cognizable motive because Rainmaker received no commissions on the trades at issue.*

To establish motive to defraud, a plaintiff must allege that the defendant "benefitted in some concrete and personal way from the purported fraud." *Id.* (quoting *Novak v. Kansas*, 216 F.3d 300, 307-08 (2d Cir. 2000)). The only benefit the Complaint attributes to Rainmaker is a routine 2.5% "supervisory" fee. (FAC ¶ 62.) But the receipt of an ordinary fee is "hardly a cogent or compelling suggestion" of an intent to defraud. *South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98, 113 (2d Cir. 2009). A profit motive "which could be imputed to any . . . for-profit endeavor[] is not sufficiently concrete for purposes of inferring scienter." *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001) (quoting *Chill v. General Electric Co.*, 101 F.3d 263, 267 (2d Cir. 1996)). The Complaint's allegation that "both Rainmaker and the Individual Defendants profited," (FAC ¶ 131), is exactly the kind of generalized profit motive that the Second Circuit consistently rejects.

The point is sharper here because the Complaint affirmatively pleads that Rainmaker did *not* receive commissions on the trades. The commissions at issue — "at least a 1.35% sales commission" — were paid to "brokers," not to Rainmaker. (FAC ¶ 62.) The Complaint confirms that it was Endoso, not Rainmaker, who "received the additional sales commission." (FAC ¶ 131.)

5

Rainmaker had no stake in the volume, price, or markup of any individual trade. The Complaint thus alleges no link between Rainmaker's compensation and the supposedly fraudulent transactions — the very link required to establish a fraudulent motive.

> **2.    *The Complaint alleges no conscious misbehavior or recklessness by Rainmaker.***

Where, as here, no motive is alleged, "the strength of the circumstantial allegations [of conscious misbehavior or recklessness] must be correspondingly greater." *Kalnit*, 264 F.3d at 142 (quoting *Beck v. Mfrs. Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987) (overturned on other grounds)). Recklessness in this context means "conscious recklessness — *i.e.*, a state of mind *approximating actual intent, and not merely a heightened form of negligence*" — or conduct representing "an extreme departure from the standards of ordinary care" where "the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *South Cherry Street, LLC*, 573 F.3d at 109 (quoting *Novak*, 216 F.3d at 312 and *In re Carter-Wallace, Inc. Securities Litigation*, 220 F.3d 36, 39 (2d Cir. 2000)). The Complaint offers nothing approaching that standard as to Rainmaker.

The Complaint's scienter allegations again focus on the "Individual Defendants" and their positions of influence at Linqto, (*see generally* FAC ¶¶ 129-150), and it concedes that "Rainmaker's relationship with Linqto and the Individual Defendants is unclear." (*Id.* ¶ 131.) Where a plaintiff cannot describe defendant's connection to the alleged fraud, the defendant cannot simultaneously be alleged to have acted with a state of mind "approximating actual intent." *South Cherry Street, LLC*, 573 F.3d at 109. Nor does the generic assertion that "all Defendants had access to Linqto's website . . . and marketing materials," (FAC ¶ 129), supply a strong inference because generalized access to information is not knowledge of contradictory facts. The Complaint's allegation that "Defendants" learned of the misconduct through 2023 and 2024 legal memoranda,

6

(FAC ¶ 10-11), does not implicate Rainmaker, because the Complaint alleges those memoranda were received by Sarris, (FAC at ¶ 95, 104), not by Rainmaker. On these facts, an inference at least as strong as the one Plaintiffs urge is that Rainmaker was a fee-for-service vendor unaware of any fraud — an inference which alone defeats the claim under *Tellabs*. *See Tellabs, Inc.*, 551 U.S. at 310.

### III. Count VII (California UCL) Fails as to Rainmaker.

Even if the categorical *Bowen* bar (addressed in Defendants' main brief) is not dispositive, Plaintiffs' claims in Count VII still fail as to Rainmaker.

### A. The "unlawful" prong claim is derivative and fails with the predicate securities claims.

Count VII's "unlawful" prong is expressly predicated on the alleged violations of the federal securities laws. (FAC ¶¶ 205-06.) By proscribing "any unlawful" business practice, Section 17200 "'borrows' violations of other laws and treats them as unlawful practices" that the California Unfair Competition Law (UCL) makes independently actionable. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999). Because the unlawful prong "is essentially an incorporation-by-reference provision," it follows that "[w]hen a statutory claim fails, a derivative UCL claim also fails." *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1085 (S.D. Cal. 2019) (quoting *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 952-53 (S.D. Cal. 2016)). As shown above, the Complaint fails to state a securities claim against Rainmaker — and the derivative UCL claim against Rainmaker fails with it.

### B. The UCL claim sounds in fraud and must satisfy Rule 9(b), which it does not.

The UCL claim against Rainmaker rests entirely on the same alleged fraudulent course of conduct as the securities claims. Where a plaintiff "allege[s] a unified course of fraudulent conduct

7

and rel[ies] entirely on that course of conduct as the basis of th[e] claim," the claim "is said to be 'grounded in fraud' . . . and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009)**.** A failure to plead that fraudulent course of conduct with particularity merits dismissal. *See id.* at 1127-28. For the reasons set out in Parts II and III above, the Complaint does not plead any fraudulent conduct by Rainmaker with particularity. Thus, the UCL claim fails for the same reason; the Court need not separately analyze the UCL claim under the unfairness prong. *Id.* at 1127.

C.     **The Complaint alleges no personal participation by Rainmaker in any unlawful or unfair practice.**

Finally, a UCL claim "cannot be predicated on vicarious liability." *Emery v. Visa Internat. Service Ass'n*., 95 Cal.App.4th 952, 960 (2002). "A defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices" found to violate section 17200. *Id.* A UCL defendant is liable only "based on the defendant's participation in or control over the unlawful practices." *People ex rel. Harris v. Sarpas*, 225 Cal.App.4th 1539, 1563 (2014). The Complaint alleges only that Rainmaker "provided services for Linqto during the Class Period." (FAC ¶ 202.) It does not allege that Rainmaker participated in or controlled the setting of markups, the admission of investors to the platform, or any of the other practices said to violate the UCL. Absent any allegation of Rainmaker's own participation in the challenged practices, Count VII fails as a matter of law and should be dismissed as to Rainmaker.

## CONCLUSION

WHEREFORE, Rainmaker requests that the Court dismiss Counts I and VII of Plaintiffs' Complaint.

Dated: July 30, 2026

Respectfully submitted,

/s/ David Slovick

David Slovick (DS1103)
James Kopecky
Kopecky Schumacher Rosenburg LLC
120 N. LaSalle Street, Suite 2000
Chicago, Illinois 60602
dslovick@ksrlaw.com
jkopecky@ksrlaw.com
(312) 380-6552

*Attorneys for Defendant Rainmaker
Securities, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

/s/ David Slovick

9