**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| A.O.H. DRIEDIJK HOLDING B.V. AND JAIMIN BHATT, Individually and on Behalf of All Others Similarly Situated<br><br>*Plaintiffs*,<br><br>v.<br><br>WILLIAM SARRIS, JOSEPH A. ENDOSO, DAVID PAUL, BRIAN MORAN, KARIM NURANI, MARGARET SLEMMER, VICTOR JIANG, ALISON DAVIS, NORMAN REED, ADAM T. HENDERSON, AND RAINMAKER SECURITIES, LLC.<br><br>*Defendants*. | Case No. 1:25-cv-5643 (LAK) |

**MEMORANDUM OF LAW IN SUPPORT OF ADAM T. HENDERSON AND
NORMAN REED'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

ALLEGATIONS IN THE FIRST AMENDED COMPLAINT .................................................. 1

ARGUMENT ...................................................................................................................... 2

    I.    THE COMPLAINT ATTRIBUTES NO ACTIONS TO MR. HENDERSON OR MR. REED ....................................................................................................................... 3

        A.    Plaintiffs Do Not Allege Any Deceptive Act by Mr. Henderson or Mr. Reed. ........ 4

        B.    Plaintiffs Do Not Allege That Mr. Henderson Or Mr. Reed Made Any Misstatements. .................................................................................................. 5

        C.    Plaintiffs Do Not Allege that Mr. Henderson or Mr. Reed Controlled Any Person Who Violated the Securities Laws. ........................................................ 6

        D.    Plaintiffs Do Not Allege That Mr. Henderson or Mr. Reed Sold or Solicited the Sale of Any Security. ...................................................................................... 7

        E.    Because There Are No Allegations of Violations of Any Law or Unfair Practice, Plaintiffs Have Not Pleaded Violations of California's Unfair Competition Law (Count VII). ........................................................................................................ 8

    II.    PLAINTIFFS FAIL TO ALLEGE THAT MR. HENDERSON OR MR. REED ACTED WITH THE REQUISITE SCIENTER THAT COULD GIVE RISE TO ANY SECURITIES-FRAUD CLAIM .................................................................................. 9

    III.    PLAINTIFFS' RULE 10B-5 CLAIMS ALSO FAIL ADEQUATELY TO PLEAD LOSS CAUSATION ........................................................................................................ 12

    IV.    THE SUPREME COURT HAS FORECLOSED PLAINTIFFS' CLAIMS FOR VIOLATIONS OF THE INVESTMENT COMPANY ACT (COUNT V) ................... 13

CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

***CASES***                                                                                        **Page(s)**

*In re Aegean Marine Petrol. Network, Inc. Sec. Litig.,*
    529 F. Supp. 3d 111, 161 (S.D.N.Y. 2021) .................................................................. 9, 10

*In re Alstom SA Sec. Litig.,*
    406 F. Supp. 2d 433 (S.D.N.Y. 2005) .............................................................................. 7

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................................. 2

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.,*
    991 F. Supp. 2d 479 (S.D.N.Y. 2014) .............................................................................. 8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955 (2007) ............................................................................. 2

*Bowen v. Ziasun Techs., Inc.,*
    116 Cal. App. 4th 777, 11 Cal. Rptr. 3d 522 (2004) ........................................................ 8

*In re Bristol-Myers Squibb Co. CVR Sec. Litig.,*
    658 F. Supp. 3d 220 (S.D.N.Y. 2023) ............................................................................ 10

*Burton v. Wells Fargo Bank, N.A.,*
    738 F. Supp. 3d 272 (E.D.N.Y. 2024) ............................................................................. 3

*Camofi Master LDC v. Riptide Worldwide, Inc.,*
    No. 10 CIV. 4020 CM, 2011 WL 1197659 (S.D.N.Y. Mar. 25, 2011) ............................. 6

*In re Cannavest Corp. Sec. Litig.,*
    307 F. Supp. 3d 222 (S.D.N.Y. 2018) ........................................................................... 6, 7

*In re Carter-Wallace, Inc. Sec. Litig.,*
    220 F.3d 36 (2d Cir. 2000) ............................................................................................ 10

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.,*
    450 F. Supp. 3d 379 (S.D.N.Y. 2020) ............................................................................. 9

*Clark v. Kitt,*
    No. 12-CV-8061 CS, 2014 WL 4054284 (S.D.N.Y. Aug. 15, 2014) .............................. 14

*In re DDAVP Direct Purchaser Antitrust Litig.,*
    585 F.3d 677 (2d Cir. 2009) ............................................................................................ 9

*DeAngelis v. Corzine,*
    17 F. Supp. 3d 270 (S.D.N.Y. 2014)........................................................................ 6

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336, 125 S. Ct. 1627 (2005)............................................................... 12, 13

*El Omari v. Buchanan,*
    No. 20 CIV. 2601 (VM), 2021 WL 5889341 (S.D.N.Y. Dec. 10, 2021) ........................... 3

*In re Enron Corp. Sec., Derivative & ERISA Litig.,*
    258 F. Supp. 2d 576 (S.D. Tex. 2003) ................................................................. 8

*In re Enron Corp. Sec., Derivative & ERISA Litig.,*
    761 F. Supp. 2d 504 (S.D. Tex. 2011) ................................................................. 7

*FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.,*
    146 S. Ct. 1546 (2026)..................................................................................... 13

*In re Gas Reclamation, Inc. Sec. Litig.,*
    733 F. Supp. 713 (S.D.N.Y. 1990) .................................................................... 8

*In re Glob. Cord Blood Corp. Sec. Litig.,*
    820 F. Supp. 3d 221 (S.D.N.Y. 2026).................................................................. 4

*IBEW Loc. 90 Pension Fund v. Deutsche Bank AG,*
    No. 11-cv-4209, 2013 WL 1223844 (S.D.N.Y. Mar. 27, 2013)...................................... 5

*Janus Cap. Grp., Inc. v. First Derivative Traders,*
    564 U.S. 135, 131 S. Ct. 2296,(2011)................................................................. 5

*In re Livent, Inc. Noteholders Sec. Litig.,*
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)................................................................. 1

*In re Lululemon Sec. Litig.,*
    14 F. Supp. 3d 553 (S.D.N.Y. 2014).................................................................. 11

*Mabon, Nugent & Co. v. Borey,*
    127 B.R. 727 (S.D.N.Y. 1991)......................................................................... 8

*In re Marsh & Mclennan Cos., Inc. Sec. Litig.,*
    501 F. Supp. 2d 452 (S.D.N.Y. 2006)................................................................. 5

*In re Miniso Grp. Holding Ltd. Sec. Litig.,*
    No. 22-CV-9864 (ER), 2026 WL 879334 (S.D.N.Y. Mar. 31, 2026) .............................. 10

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.,*
    531 F. Supp. 3d 673 (S.D.N.Y. 2021).......................................................................... 4

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000)....................................................................................... 10

*O'Connor v. Uber Techs., Inc.,*
    No. C-13-3826 EMC, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) .................................. 9

*In re Parmalat Sec. Litig.,*
    377 F. Supp. 2d 390 (S.D.N.Y. 2005)............................................................................ 3

*Penn. Ave. Funds v. Inyx Inc.,*
    No. 08-CV-6857 (PKC), 2010 WL 743562 (S.D.N.Y. Mar. 1, 2010)............................. 11

*Pinter v. Dahl,*
    486 U.S. 622, 108 S. Ct. 2063 (1988)........................................................................ 7, 8

*In re Refco, Inc. Sec. Litig.,*
    503 F. Supp. 2d 611 (S.D.N.Y. 2007).......................................................................... 3

*Royal Am. Managers, Inc. v. IRC Holding Corp.,*
    885 F.2d 1011 (2d Cir. 1989)...................................................................................... 8

*In re Satyam Comput. Servs. Ltd. Sec. Litig.,*
    915 F. Supp. 2d 450 (S.D.N.Y. 2013)......................................................................... 11

*SEC v. Boock, No. 09 CIV. 8261 DLC,*
    No. 09 CIV 8261 DLC, 2011 WL 3792819 (S.D.N.Y. Aug. 25, 2011) ........................... 8

*Set Capital LLC v. Credit Suisse Grp. AG,*
    996 F.3d 64 (2d Cir. 2021).......................................................................................... 9

*Siegal v. Gamble,*
    No. 13-CV-03570-RS, 2016 WL 1085787 (N.D. Cal. Mar. 21, 2016) ............................ 8

*Slayton v. Am. Express Co.,*
    604 F.3d 758 (2d Cir. 2010)....................................................................................... 11

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.,*
    33 F. Supp. 3d 401 (S.D.N.Y. 2014)........................................................................... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308, 127 S. Ct. 2499 (2007)........................................................................... 9

*TransUnion LLC v. Ramirez*,
    594 U.S. 413, 141 S. Ct. 2190 (2021) ............................................................................. 13

*In re Tronox, Inc. Sec. Litig.*,
    769 F. Supp. 2d 202 (S.D.N.Y. 2011) ............................................................................ 6, 7

*Tutor Perini Bldg. Corp. v. N.Y.C. Reg'l Ctr., LLC*,
    525 F. Supp. 3d 482 (S.D.N.Y. 2021) ............................................................................... 4

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
    504 F. Supp. 3d 224 (S.D.N.Y. 2020) ......................................................................... 6, 10

*In re Zeta Glob. Holdings Corp. Sec. Litig.*,
    No. 240-cv-8961, 2026 WL 1971169 (S.D.N.Y. July 8, 2026) .................................... 7, 10

## STATUTES

15 U.S.C. § 78j(a) ..................................................................................................................... 6

15 U.S.C. § 78u-4(b)(1)-(2) ...................................................................................................... 3

15 U.S.C. § 78u-4(b)(4) ........................................................................................................... 12

## FEDERAL RULES

Fed. R. Civ. P. 9(b) ........................................................................................................... 3, 4, 9

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 2

**PRELIMINARY STATEMENT**

Adam T. Henderson and Norman Reed are directors of Linqto, Inc. who reside in California. Across 217 paragraphs and 63 pages, those are the First Amended Complaint's *only* individualized allegations about either defendant. Plaintiffs do not allege that either made any statement—misleading or otherwise—to any investor or the public; designed, marketed, or set pricing for the Linqto platform; sold or solicited the sale of any security; controlled the Company or any other defendant; or even knew about any of the Company's allegedly fraudulent conduct. Instead, Plaintiffs lump Mr. Henderson and Mr. Reed together with Linqto's former officers, attributing knowledge and alleged culpable acts collectively to the "Individual Defendants" or "Defendants." Such "unfounded assertions of fraud against any person associated with corporate bad news" are exactly the type of group pleading Congress sought to prohibit with the Private Securities Litigation Reform Act. *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 418 (S.D.N.Y. 2001). Because there are no particularized allegations that Mr. Henderson or Mr. Reed culpably participated in any misconduct, all claims against them should be dismissed with prejudice.

**ALLEGATIONS IN THE FIRST AMENDED COMPLAINT**

The Complaint alleges that William Sarris founded Linqto in 2010 and that Sarris and Linqto's former management team "evolved" it into a financial technology and digital trading platform offering accredited investors access to privately held companies, primarily "unicorns" and mid-to-late-stage startups. ¶¶ 2, 4, 20, 33-41.[1] Plaintiffs' theory is that the platform was, in

---

[1] For purposes of this motion to dismiss only, Mr. Reed and Mr. Henderson assume the truth of well-pleaded factual allegations, but not legal conclusions or conclusory allegations that group defendants together. Citations to "¶ _" are to the First Amended Complaint (ECF No. 46). Citations to "Dkt. _" are to filings in the Linqto Chapter 11 proceeding, *In re Linqto Texas, LLC, et al.*, No. 25-90186 (Bankr. S.D. Tex.). Citations to the Joint Brief refer to the Memorandum of Law in Support of the Moving Defendants' Consolidated Motion to Dismiss. Mr. Henderson and Mr. Reed join in the legal arguments advanced in the Joint Brief, to the extent applicable to them in their capacity as outside directors

1

fact, something different: They allege that investors actually bought interests in Linqto-created Series vehicles, not shares of private companies directly; that Linqto embedded undisclosed pricing components and markups; and that it permitted non-accredited investors, all in violation of state and federal securities laws. ¶¶ 7-9, 43-64. The Complaint further alleges that two memoranda issued by outside and internal counsel highlighted the Company's legal and compliance issues, but that no corrective action was taken. ¶¶ 10-11, 95-110.

What the Complaint does not allege, anywhere, is that Mr. Henderson or Mr. Reed had *any* involvement in or knowledge of the alleged fraud. Indeed, there are only two allegations about any activity by the Board, and those allegations refer to the Board as a whole and not Mr. Henderson or Mr. Reed specifically. *First*, Plaintiffs allege that the proposed—but ultimately terminated—transaction with Blockchain Coinvestors Acquisition Corp. I ("BCSA") was "typically" the type of transaction to require Board approval and that therefore "Defendants"—not Mr. Henderson or Mr. Reed specifically—were likely made aware of alleged compliance issues at the Company that were identified through reviews undertaken in connection with the transaction. ¶ 149. *Second*, Plaintiffs allege that in November 2024, Mr. Sarris told an employee that the Board had told Mr. Sarris that "we need to shut everything down," and "to stop marketing because they were getting sued." ¶ 150. Neither allegation comes anywhere close to stating a securities fraud or other claim against Mr. Henderson or Mr. Reed.

## ARGUMENT

A complaint survives Rule 12(b)(6) only if it pleads enough factual matter to state a plausible claim; legal conclusions and conclusory assertions of collective wrongdoing do not suffice. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *Ashcroft*

---

of Linqto, and incorporate them by reference herein. Unless otherwise indicated, internal quotation marks and citations are omitted.

*v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Claims sounding in fraud must satisfy the particularity requirements of Rule 9(b). *See* Fed. R. Civ. P. 9(b). Allegations of primary violations based on alleged misrepresentations in violation of the Securities Exchange Act of 1934 must also survive the heightened pleading requirements of the Private Securities Litigation Reform Act, which requires plaintiffs, among other things, to specify each challenged statement, explain why it was misleading, and plead particularized facts giving rise to a strong inference of scienter. *See* 15 U.S.C. § 78u-4(b)(1)-(2). And "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform *each defendant* of the nature of his or her alleged participation in the fraud." *In re Parmalat Sec. Litig.*, 377 F. Supp. 2d 390, 401 (S.D.N.Y. 2005) (Kaplan, J.) (cleaned up); *see also Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 294 (E.D.N.Y. 2024) ("If multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them."). A plaintiff is required to "satisfy Rule 9(b) as to each defendant, and cannot do so by making vague allegations about defendants as a unit." *El Omari v. Buchanan*, No. 20 CIV. 2601 (VM), 2021 WL 5889341, at *5 (S.D.N.Y. Dec. 10, 2021), *aff'd,* No. 22-55-CV, 2022 WL 4454536 (2d Cir. Sept. 26, 2022).

## I.    THE COMPLAINT ATTRIBUTES NO ACTIONS TO MR. HENDERSON OR MR. REED

It is axiomatic that "[w]hen fraud is alleged against multiple defendants, a plaintiff must set forth separately the acts complained of by each defendant." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 641 (S.D.N.Y. 2007). Here, Plaintiffs complain of no acts by Mr. Henderson or Mr. Reed: indeed, Plaintiffs attribute no acts at all, wrongful or otherwise, to these defendants. Every allegedly fraudulent statement is alleged to have been made by "Linqto," its "website," its "smartphone application," its "marketing materials," its "press releases," its "mass emails and communications" or by another of the Individual Defendants, ¶¶ 73-94; there are no allegations

3

that Mr. Henderson or Mr. Reed made any statements at all. Every allegedly deceptive act—selling securities to non-accredited investors, disguising the ownership structure, imposing undisclosed markups and fees, and using manipulative marketing tactics—is alleged to have been taken by the Company or by other Individual Defendants, ¶¶ 43-72, 162; there are no allegations that Mr. Henderson or Mr. Reed committed any act connected to these purported schemes. Plaintiffs do not allege that Mr. Henderson or Mr. Reed sold or solicited the sale of any security to anyone at any time. And they do not allege that the two directors, neither of whom was ever a Company officer, exercised actual control over the Company, any other Defendant, or any of the matters at issue. This failure is fatal to Plaintiffs' claims.

### A.   Plaintiffs Do Not Allege Any Deceptive Act by Mr. Henderson or Mr. Reed.

Plaintiffs do not allege Mr. Henderson or Mr. Reed committed any deceptive or manipulative act, as is required to support a scheme liability claim (Count I). The First Amended Complaint details a series of allegedly fraudulent acts purportedly undertaken by "Linqto," "Linqto's management," and certain of the Individual Defendants, ¶¶ 43-72, and then, in the claims section, concludes that all those acts were taken by all "Defendants," ¶ 162. But it is well-settled that this sort of "group pleading" is prohibited: "Rule 9(b) is not satisfied by a complaint in which defendants are clumped together in vague allegations." *Tutor Perini Bldg. Corp. v. N.Y.C. Reg'l Ctr., LLC*, 525 F. Supp. 3d 482, 517 (S.D.N.Y. 2021); *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 729 (S.D.N.Y. 2021) ("Plaintiffs must satisfy Rule 9(b) as to each defendant, and cannot do so by making vague allegations about the defendants as a unit."). Plaintiffs cannot satisfy this burden merely by pleading that Mr. Henderson and Mr. Reed served on the Board of the Company at which the allegedly deceptive acts occurred. Allegations of Board membership do not themselves sufficiently plead actionable involvement in a fraudulent scheme. *See In re Glob. Cord Blood Corp. Sec. Litig.*, 820 F. Supp. 3d 221, 258 (S.D.N.Y. 2026)

4

(dismissing scheme liability claim against independent directors because the complaint did not allege with particularity how any specific act by the directors "could be a deceptive or manipulative act in furtherance of a scheme to defraud"); *see also, e.g.*, *IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*, No. 11-cv-4209, 2013 WL 1223844, at \*14 (S.D.N.Y. Mar. 27, 2013) (holding allegations that an individual defendant sat on a bank's supervisory board alone are "insufficient to support a claim that [the defendant] . . . can be liable as a participant in a fraudulent scheme"). In the absence of any specific allegations as to what deceptive or manipulative acts were performed by Mr. Henderson and Mr. Reed in particular, and there were none, Plaintiffs' scheme liability claim must be dismissed. *See In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 491 (S.D.N.Y. 2006) ("[T]he Complaint does not include sufficient particularized allegations of the individual defendants' active participation in a scheme to manipulate MMC securities.").

B.    **Plaintiffs Do Not Allege That Mr. Henderson Or Mr. Reed Made Any Misstatements.**

Plaintiffs do not allege that Mr. Henderson or Mr. Reed were the speakers of, or had "ultimate authority" over, any allegedly fraudulent statement's content and communication, *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142, 131 S. Ct. 2296, 2302 (2011), as required to state a Rule 10b-5(b) claim (Count II). Instead, the purported misstatements and omissions are alleged to have appeared on Linqto's website and smartphone application, and in Linqto's marketing materials, press releases, mass emails and communications, ¶¶ 73-94, or to have been made by one of the other Individual Defendants, ¶¶ 68-69, 73, 79, 176. The Complaint attributes no statements to Mr. Henderson or Mr. Reed. The Complaint does not even allege that Mr. Henderson or Mr. Reed ever saw or were aware of the statements it challenges. Indeed, the Complaint lists five defendants who were allegedly involved in "preparing, reviewing, approving,

5

and/or disseminating" Linqto's statements and disclosures; Mr. Henderson and Mr. Reed are not among them. ¶ 176.

All the Complaint offers with respect to Mr. Henderson or Mr. Reed is the allegation that "[d]ue to" their "high-level positions," all the Individual Defendants, as a group, "possessed the power and authority to control the contents" of Linqto's communications, and therefore "made" the statements at issue. ¶ 32. To the extent any such "group pleading" is permitted after *Janus*, the doctrine extends only to corporate officers "with direct involvement in the everyday business of the company." *See Camofi Master LDC v. Riptide Worldwide, Inc.*, No. 10 CIV. 4020 CM, 2011 WL 1197659, at *6 (S.D.N.Y. Mar. 25, 2011). The Complaint contains no such allegations about Mr. Henderson or Mr. Reed specifically. Plaintiffs cannot attribute statements made by the Company to Mr. Henderson or Mr. Reed merely because they occupy a "high-level position" on the Company's Board. *See In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 242 (S.D.N.Y. 2018) (allegations that defendants were directors of the company were not sufficient to attribute company's statements to them); *DeAngelis v. Corzine,* 17 F. Supp. 3d 270, 281 (S.D.N.Y. 2014) (dismissing claims against outside directors in the absence of allegations that the directors "were sufficiently involved with [the company's] daily affairs").

### C.    **Plaintiffs Do Not Allege that Mr. Henderson or Mr. Reed Controlled Any Person Who Violated the Securities Laws.**

Plaintiffs' allegations of control-person liability in violation of Section 20(a) of the 1934 Act in Count III fare no better. As discussed in Section II.A.4 of the Joint Brief, control is "the power to direct or cause the direction of the management and policies of a person." *In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202, 207 (S.D.N.Y. 2011). The "power to influence managerial decisions" is insufficient; instead, "actual control is essential to control person liability." *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 263 (S.D.N.Y. 2020) (cleaned up). Put

6

differently, a control person must have "actual control over the *transaction* in question." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) (cleaned up, emphasis in original).

Plaintiffs plead no facts suggesting, let alone showing, that Mr. Henderson or Mr. Reed had "actual control" over any of the matters at issue in the First Amended Complaint. All they allege is that each Individual Defendant is a "Control Person Defendant" who "participated in the day-to-day operation and management of Linqto." ¶¶ 175-76. But they plead no specific facts to support that conclusion with respect to Mr. Henderson or Mr. Reed: all Plaintiffs allege with respect to either is that they "served on the Board." ¶ 175. "[A] bare allegation of director status, without more, is insufficient" to allege control for purposes of a Section 20(a) claim. *Tronox*, 769 F. Supp. 2d at 208 n.10; *see also In re Zeta Glob. Holdings Corp. Sec. Litig.*, No. 24-cv-8961, 2026 WL 1971169, at *12-13 (S.D.N.Y. July 8, 2026) (same); *Cannavest*, 307 F. Supp. 3d at 254 (same). That is all Plaintiffs offer.

### D.    Plaintiffs Do Not Allege That Mr. Henderson or Mr. Reed Sold or Solicited the Sale of Any Security.

Count IV (alleging violations of Section 5 of the 1933 Act for selling or soliciting unregistered securities), and Count VI (alleging violations of the Texas Securities Act), both fail for the same basic reason: Mr. Henderson and Mr. Reed are not alleged to have sold or solicited the sale of any security. Yet, as explained in Sections VI.A and VI.C.1 of the Joint Brief, that is exactly what each statute requires. *See Pinter v. Dahl*, 486 U.S. 622, 647, 108 S. Ct. 2063, 2078 (1988) (liability under Section 5 runs only to those who pass title to the buyer as well as those who solicit the sale of securities "motivated at least in part by a desire to serve his own financial interests or those of the securities owner."); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 534 (S.D. Tex. 2011) (recognizing "liability only on persons who actually pass title or who actively engage in solicitation of the securities purchased by a plaintiff"). Here, Plaintiffs offer

7

only the conclusory allegation that the "Individual Defendants directed the offer and sale of securities without a registration statement or applicable exemption," including by controlling pricing, managing marketing, and performing sales activities. ¶ 182. That conclusory allegation is not sufficient.[2] *See Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1017 (2d Cir. 1989) (holding director not seller); *In re Gas Reclamation, Inc. Sec. Litig.*, 733 F. Supp. 713, 723–24 (S.D.N.Y. 1990) (no Section 12 liability where defendant did not have "direct contact" or "personally solicit[]" plaintiff or other investors). Nor, again, is the fact that Mr. Henderson and Mr. Reed sat on the Board. *Cf. Mabon, Nugent & Co. v. Borey*, 127 B.R. 727, 735 (S.D.N.Y. 1991) (holding that even allegations defendants were "members of the board of directors which authorized the transaction" are insufficient to make defendants statutory sellers for purposes of Section 12); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 644 (S.D. Tex. 2003) (allegations of directorship are insufficient to state a claim under the Texas Securities Act).

### E.    Because There Are No Allegations of Violations of Any Law or Unfair Practice, Plaintiffs Have Not Pleaded Violations of California's Unfair Competition Law (Count VII).

As discussed above, Plaintiffs have not alleged that Mr. Henderson or Mr. Reed committed any act, let alone an unlawful or unfair one. And board service, standing alone, is not unlawful, fraudulent, or deceptive. Therefore, Count VII, alleging violations of California's Unfair Competition Law, must also be dismissed.[3] *See, e.g.*, *In re Bank of N.Y. Mellon Corp. Forex*

---

[2] Non-individualized allegations that the Individual Defendants were, for an unspecified reason, "necessary participants in the unregistered distribution," ¶ 182, do not move the needle. The Supreme Court in *Pinter* "rejected the idea that an individual could be liable as a 'necessary participant' and 'substantial factor' in the sale or offer of an unregistered security. *See SEC v. Boock*, No. 09 CIV. 8261 DLC, 2011 WL 3792819, at *16 n.17 (S.D.N.Y. Aug. 25, 2011) (citing *Pinter*, 486 U.S. at 654, 108 S. Ct. at 2082).

[3] The Count also fails for the reasons articulated in Section VI.C.2 of the Joint Brief—namely, the California statute does not apply to claims predicated on "securities transactions" like those underlying the allegations here. *See Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 788, 11 Cal. Rptr. 3d 522, 531 (2004), *as modified on denial of reh'g*

*Transactions Litig.*, 991 F. Supp. 2d 479, 500 (S.D.N.Y. 2014) (Kaplan, J.) (applying Rule 9(b) and concluding that because "plaintiffs have failed to allege such a violation, plaintiffs do not state a claim under this prong"); *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013) (dismissing claims as to individual defendants because "California law does not impose liability on corporate officers merely for their role in the corporation, but only for wrongful acts in which they have been personally involved").

## II.  PLAINTIFFS FAIL TO ALLEGE THAT MR. HENDERSON OR MR. REED ACTED WITH THE REQUISITE SCIENTER THAT COULD GIVE RISE TO ANY SECURITIES-FRAUD CLAIM

The Complaint also fails because it lacks particularized allegations of scienter or culpable participation as to Mr. Henderson or Mr. Reed. This pleading defect requires dismissal of Counts I, II, and III. As explained in Section II.A.3 of the Joint Brief, in a multi-defendant case, plaintiffs must plead facts supporting scienter for each defendant; "guilt by association is impermissible." *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 419 (S.D.N.Y. 2020) (quoting *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009)). Bare allegations of title or board membership are "plainly insufficient." *In re Aegean Marine Petrol. Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 161 (S.D.N.Y. 2021).

A court must "evaluate the sufficiency of a complaint's allegations of scienter holistically, considering *all* of the facts alleged, taken collectively, rather than any individual allegation, scrutinized in isolation." *Set Capital LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 78 (2d Cir. 2021). The scienter inference must be "cogent and at least as compelling as any opposing inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324, 127 S. Ct. 2499, 2510 (2007).

---

(Apr. 7, 2004); *see also, e.g.*, *Siegal v. Gamble*, No. 13-CV-03570-RS, 2016 WL 1085787, at *7 (N.D. Cal. Mar. 21, 2016) (recognizing that "the UCL's protections do not extend to securities transactions").

Plaintiffs must plead defendant-specific facts showing motive and opportunity to defraud investors, or strong circumstantial evidence of conscious misbehavior or recklessness.[4]

The Complaint contains no specific allegations that Mr. Henderson or Mr. Reed had a concrete, personal motive to defraud investors. As discussed in Section IV.B of the Joint Brief, motive-and-opportunity allegations require a benefit "in some concrete and personal way from the purported fraud." *Aegean Marine*, 529 F. Supp. 3d at 162; *see also In re Miniso Grp. Holding Ltd. Sec. Litig.*, No. 22-CV-9864 (ER), 2026 WL 879334, at *18 (S.D.N.Y. Mar. 31, 2026). The Complaint alleges only that Linqto's revenue increased after Mr. Sarris allegedly raised a platform security's price. ¶ 132. But generalized motives to sustain corporate profitability, maintain stock price, or increase compensation do not sufficiently plead scienter. *See Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000).

Nor are there any allegations that Mr. Henderson or Mr. Reed engaged in conscious misbehavior or acted with conscious recklessness. In a private securities action, "conscious recklessness" is a state of mind "approximating actual intent," *id.* at 312, and requires conduct that is "highly unreasonable" and an "extreme departure from the standards of ordinary care" where the danger was known or so obvious the defendant must have known it. *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000). But the Complaint contains no allegations whatsoever about what Mr. Henderson or Mr. Reed knew or could have known, beyond the fact that they were members of the Board. That is fatal: "generalized allegations about management that do not implicate any of the named Defendants are insufficient to support an inference of scienter." *In re*

---

[4] As to Count III (control-person violations), culpable participation must be alleged with particularity and "may be established by pleading either conscious misbehavior or recklessness"—*i.e.*, the same allegations required to plead scienter. *Weight Watchers*, 504 F. Supp. 3d at 264; *see also Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438 (S.D.N.Y. 2014) (concluding "that culpable participation is an element of a Section 20(a) claim that must be pleaded with the same particularity as scienter"). Allegations of "fail[ing] to adequately monitor the behavior of others" are insufficient to plead culpable participation. *See Zeta Global*, 2026 WL 1971169, at *13.

*Bristol-Myers Squibb Co. CVR Sec. Litig.*, 658 F. Supp. 3d 220, 233 (S.D.N.Y. 2023) (cleaned up); *see also Penn. Ave. Funds v. Inyx Inc.*, No. 08-CV-6857 (PKC), 2010 WL 743562, at *12 (S.D.N.Y. Mar. 1, 2010) (recognizing that "group pleading of scienter . . . runs afoul of" the PSLRA).

The closest Plaintiffs come to scienter allegations involving Mr. Henderson and Mr. Reed concern the legal memoranda generated in 2023 and 2024. The First Amended Complaint asserts in speculative and conclusory fashion only that the Board "likely" knew or disregarded the issues in those memoranda; it pleads no facts showing that Mr. Henderson or Mr. Reed received, reviewed, discussed, or acted contrary to either memorandum. ¶¶ 147-49. An allegation that a defendant "merely ought to have known" about a report "is not sufficient to allege recklessness." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 574 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015); *see also In re Satyam Comput. Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 480 (S.D.N.Y. 2013) (same). Plaintiffs also allege that an email marketing manager told a former employee that Mr. Sarris reported to the email marketing manager that the Board told Mr. Sarris that "we need to shut everything down, we are getting sued." ¶ 150. Putting aside the obvious issues with this third-hand report, this allegation says nothing about Mr. Henderson or Mr. Reed specifically. And in any event, it provides far greater support to the competing inference that the Board, upon learning of potential litigation or compliance concerns, sought to stop the allegedly improper marketing and cause Linqto to come into compliance. *See Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010) (scienter was not sufficiently pleaded where the "facts . . . suggest[ed] that [the defendant] . . . was endeavoring in good faith" to understand and resolve the issue).

11

### III. PLAINTIFFS' RULE 10B-5 CLAIMS ALSO FAIL ADEQUATELY TO PLEAD LOSS CAUSATION

Plaintiffs' claims also fail as to Mr. Henderson and Mr. Reed because they do not plead "that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4); *see Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 338, 125 S. Ct. 1627, 1630 (2005). Neither of Plaintiffs' two theories of loss causation is plausible.

*First*, Plaintiffs insist that they purchased Series interests "at artificially inflated, overstated, and manipulated prices that far exceeded the Private Securities' acquisition price." ¶ 125. But, as noted in Section V.A of the Joint Brief "simply . . . alleging in the complaint and subsequently establishing that 'the price' of the security 'on the date of purchase was inflated because of the misrepresentation'" is insufficient as a matter of law to amount to an allegation of loss causation. *Dura*, 544 U.S. at 338, 125 S. Ct. at 1629 (emphasis omitted). Moreover, as detailed above, *supra* Sections I.A, I.B, Plaintiffs do not even allege that Mr. Henderson or Mr. Reed engaged in any conduct, or made any misrepresentation, let alone one causing any loss.

*Second*, given the current status of Linqto's bankruptcy, it is unclear if unitholders have realized, or will ever realize, any economic losses. At present, Linqto has a confirmed, but not yet effective bankruptcy plan. *See* Dkt. 1522 (Joint Chapter 11 Plan), Art. IV; Dkt. 1598 (Confirmation Order). The Plan provides Series holders like Plaintiffs with two options to preserve upside for their historical investments and optionality for their investment objectives. *First*, Series holders can opt into a Liquidating Trust, designed to manage the distribution of Platform Securities in kind and any proceeds from sales of those securities. *See* Dkt. 1522, Art. IV. *Second*, Series holders can opt into a Closed-End Fund, in which a customer's securities would be transferred to a publicly listed fund in exchange for publicly traded shares in that fund. *See id.* Put simply, it is premature

to determine if there is any loss where Linqto's bankruptcy plan has not yet become effective— meaning that neither the Liquidating Trust nor the Closed-End Fund have yet launched. *See Dura*, 544 U.S. at 343, 125 S. Ct. at 1632 (recognizing that a plaintiff must have "suffered actual economic loss"); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441, 141 S. Ct. 2190, 2213 (2021) ("[T]he risk of future harm on its own does not support Article III standing for the plaintiffs' damages claim.").[5]

*Third*, Plaintiffs do not allege that Mr. Henderson or Mr. Reed were involved in, authorized, or otherwise approved of Mr. Sarris's sale of Ripple shares as part of a December 2024 tender offer. ¶¶ 127-28. They therefore are not alleged to have had any role in that alleged loss.

## IV. THE SUPREME COURT HAS FORECLOSED PLAINTIFFS' CLAIMS FOR VIOLATIONS OF THE INVESTMENT COMPANY ACT (COUNT V)

Plaintiffs contend in Count V that the "Individual Defendants have violated § 7(a) of the 1940 [Investment Company] Act through the offer, sale, and delivery of securities without registering the offeror as an investment company." ¶ 188. For the reasons articulated in Section VI.B of the Joint Brief, Plaintiffs do not have a cause of action because "private parties generally cannot enforce the ICA." *FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*, 146 S. Ct. 1546, 1554 (2026).

---

[5] To the extent that a customer has a rescission claim, the customer still holds a rescission claim against a Linqto-affiliated-entity as part of the Plan. *See* Dkt. 1522 (Joint Chapter 11 Plan), Art. IV.

**CONCLUSION**

For these reasons and those set forth in the Consolidated Motion, Plaintiffs' claims against Mr. Henderson and Mr. Reed should be dismissed. Because Plaintiffs have already once had the chance to amend their complaint, and because they cannot cure these deficiencies by amendment, dismissal should be with prejudice. *See Clark v. Kitt*, No. 12-CV-8061 CS, 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014), *aff'd*, 619 F. App'x 34 (2d Cir. 2015).

Dated: July 30, 2026

Respectfully submitted,

Jenna M. Dabbs
Kate L. Doniger
Benjamin S. Spiegel
Jacob Steiner
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883

*Attorneys for Adam T. Henderson and Norman Reed*

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of July 2026, I caused the foregoing motion to be electronically served on all counsel of record via the CM/ECF electronic filing system.

_/s/ Jenna M. Dabbs_