**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

A.O.H. DRIEDIJK HOLDING B.V. AND JAIMIN BHATT, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

WILLIAM SARRIS, JOSEPH A. ENDOSO, DAVID PAUL, BRIAN MORAN, KARIM NURANI, MARGARET SLEMMER, VICTOR JIANG, ALISON DAVIS, NORMAN REED, ADAM T. HENDERSON, AND RAINMAKER SECURITIES, LLC,

Defendants.

Case No.: 1:25-CV-05643-LAK

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS ADAM T. HENDERSON, NORMAN REED, AND MARGARET SLEMMER'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1
ARGUMENT ..... 2
I. THE SECTION 10(b) CLAIMS FAIL AS TO THE OUTSIDE DIRECTORS (COUNTS I–II) ..... 2
A. The AC Identifies No Statements Made By Any Outside Director ..... 2
B. The AC Identifies No Deceptive Act By Any Outside Director ..... 5
C. The AC Fails To Plead A Strong Inference Of Scienter As To Any Outside Director ..... 6
D. The AC Fails To Adequately Plead Loss Causation ..... 10
II. NO OUTSIDE DIRECTOR IS A CONTROL PERSON (COUNT III) ..... 11
III. NO OUTSIDE DIRECTOR IS A STATUTORY SELLER (COUNT IV) ..... 12
IV. PLAINTIFFS' STATE LAW CLAIMS ARE DEFICIENT (COUNTS VI-VII) ..... 13
A. Plaintiffs Fail To State A Claim Under The Texas Securities Act ..... 13
B. Plaintiffs Fail To State A Claim Under The California Unfair Competition Law ..... 14
CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alibaba Grp. Holding Sec. Litig.*,
No. 20 Civ. 9568, 2023 WL 2601472 (S.D.N.Y. Mar. 22, 2023) ....................12

*Altshares Event-Driven ETF v. Endeavor Grp. Holdings*,
No. 26 Civ. 00526, 2026 WL 1848123 (C.D. Cal. June 23, 2026)....................9

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
93 F. Supp. 2d 424 (S.D.N.Y. 2000)....................13

*In re Atlas Air Worldwide Holdings Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004)....................9

*In re Avon Sec. Litig.*,
No. 19 Civ. 01420, 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) ....................8

*Balestra v. ATBCOIN LLC*,
380 F. Supp. 3d 340 (S.D.N.Y. 2019)....................13

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017)....................3

*Batwin v. Occam Networks, Inc.*,
No. 07 Civ. 2750, 2008 WL 2676364 (C.D. Cal. July 1, 2008) ....................12

*Betz v. Trainer Wortham & Co., Inc.*,
829 F. Supp. 2d 860 (N.D. Cal. 2011) ....................15

*Billitteri v. Sec. Am., Inc.*,
2010 WL 6785484 (N.D. Tex. July 26, 2010) ....................13, 14

*In re BISYS Sec. Litig.*,
397 F. Supp. 2d 430 (S.D.N.Y. 2005)....................8

*Bowen v. Ziasun Techs., Inc.*,
11 Cal. Rptr. 3d 522 (Cal. Ct. App. 2004) ....................15

*In re Cannavest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)....................4

*In re Carter-Wallace, Inc. Sec. Litig.*,
220 F.3d 36 (2d Cir. 2000)....................9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Complete Mgmt. Sec. Litig.*,
153 F. Supp. 2d 314 (S.D.N.Y. 2001)....7

*CompuDyne Corp. v. Shane*,
453 F. Supp. 2d 807 (S.D.N.Y. 2006)....12

*Cosmas v. Hassett*,
886 F.2d 8 (2d Cir. 1989) ....9

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336, 125 S. Ct. 1627 (2005)....10, 11

*Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
343 F.3d 189 (2d Cir. 2003)....11

*Emps.' Ret. Sys. of Gov't of V.I. v. Blanford*,
794 F.3d 297 (2d Cir. 2015)....10

*In re Farfetch Ltd. Sec. Litig.*,
No. 23 Civ. 10982, 2026 WL 2925885 (S.D.N.Y. Sep. 29, 2026) ....9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)....11

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
336 F. Supp. 3d 196 (S.D.N.Y. 2018)....8

*George v. China Auto. Sys., Inc.*,
No. 11 Civ. 7533, 2012 WL 3205062 (S.D.N.Y. Aug. 8, 2012) ....11

*In re Gildan Activewear Sec. Litig.*,
636 F. Supp. 2d 261 (S.D.N.Y. 2009)....6

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011)....7

*In re Glob. Cord Blood Corp. Sec. Litig.*,
820 F. Supp. 3d 221 (S.D.N.Y. 2026)....5

*Gruber v. Gilbertson*,
No. 16 Civ. 9727, 2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) ....7

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
No. 11 Civ. 4209, 2013 WL 1223844 (S.D.N.Y. Mar. 27, 2013) ....5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Janus Cap. Grp. v. First Derivative Traders*,
564 U.S. 135, 131 S. Ct. 2296 (2011)....................2, 3

*In re JUUL Labs, Inc., Mktg., Sales Pracs., and Prods. Liab. Litig.*,
497 F. Supp. 3d 552 (N.D. Cal. 2020)....................14

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)....................6

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005)....................10, 11

*Levy v. Maggiore*,
48 F. Supp. 3d 428 (E.D.N.Y. 2014)....................4

*In re Livent, Inc. Sec. Litig.*,
78 F. Supp. 2d 194 (S.D.N.Y. 1999)....................9

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014)....................6

*Mabon, Nugent & Co. v. Borey*,
127 B.R. 727 (S.D.N.Y. 1991)....................13

*Marini v. Adamo*,
995 F. Supp. 2d 155 (E.D.N.Y. 2014)....................11

*In re Marsh & McLennan Sec. Litig.*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006)....................5

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003)....................9

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)....................8

*O'Connor v. Uber Techs., Inc.*,
No. 13 Civ. 3826, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013)....................14

*In re Optimal U.S. Litig.*,
837 F. Supp. 2d 244 (S.D.N.Y. 2011)....................3

*Orbis Glob. Equity Le Fund (Austl. Registered) v. Vale S.A.*,
No. 21 Civ. 6590, 2026 WL 670157 (E.D.N.Y. Mar. 10, 2026)....................3

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Philip Services Corp. Sec. Litig.*,
383 F. Supp. 2d 463 (S.D.N.Y. 2004)....4

*Pitman v. Immunovant Inc.*,
No. 21 Civ. 918, 2024 WL 964258 (E.D.N.Y. Feb. 25, 2024)....9

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*,
89 F. Supp. 3d 602 (S.D.N.Y. 2015)....8

*In re Quintel Ent. Inc. Sec. Litig.*,
72 F. Supp. 2d 283 (S.D.N.Y. 1999)....12

*Saskatchewan Healthcare Emp. Pension Plan v. KE Holdings*,
718 F. Supp. 3d 344 (S.D.N.Y. 2024)....6

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
915 F. Supp. 2d 450 (S.D.N.Y. 2013)....7, 9

*SEC v. Sugarman*,
No. 19 Civ. 5998, 2020 WL 5819848 (S.D.N.Y. Sep. 30, 2020)....5

*SEC v. Tecumseh Holdings Corp.*,
No. 03 Civ. 5490, 2009 WL 4975263 (S.D.N.Y. Dec. 22, 2009)....13

*In re ShengdaTech, Inc. Sec. Litig.*,
No. 11 Civ. 1918, 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014)....3, 4

*Slack v. Shreve*,
No. 24 Civ. 00014, 2024 WL 4644610 (Tex. App. Oct. 31, 2024)....13

*Slayton v. Am. Express Co.*,
604 F.3d 758 (2d Cir. 2010)....8, 10

*In re Smith Barney Transfer Agent Litig.*,
884 F. Supp. 2d 152 (S.D.N.Y. 2012)....12

*Suez Equity Invs., L.P. v. Toronto-Dominion Bank*,
250 F.3d 87 (2d Cir. 2001)....11

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap., Inc.*,
531 F.3d 190 (2d Cir. 2008)....10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308, 127 S. Ct. 2499 (2007)....10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re UBS AG Sec. Litig.*,
No. 07 Civ. 11225, 2012 WL 4471265 (S.D.N.Y. Sep. 28, 2012) ....................3

*In re Weight Watchers Int'l Sec. Litig.*,
504 F. Supp. 3d 224 (S.D.N.Y. 2020)....................3

*In re WorldCom Sec. Litig.*,
No. 02 Civ. 3288, 2003 WL 23174761 (S.D.N.Y. Dec. 3, 2003).................... 9-10

*Xu v. Gridsum Holding Inc.*,
624 F. Supp. 3d 352 (S.D.N.Y. 2022)....................2, 3

*Yi Xiang v. Inovalon Holdings, Inc.*,
254 F. Supp. 3d 635 (S.D.N.Y. 2017)....................12

*zCap Equity Fund LLC v. LuxUrban Hotels*,
792 F. Supp. 3d 407 (S.D.N.Y. 2025)....................12

*In re Zeta Glob. Holdings Corp. Sec. Litig.*,
838 F. Supp. 3d 413 (S.D.N.Y. 2026)....................5

**Statutes**

15 U.S.C. § 78u-4(b)(4) ....................10

## PRELIMINARY STATEMENT

The Opposition treats a Board seat as a substitute for factual allegations of misconduct. If the Company or its executives took an action, Plaintiffs assume the Outside Directors (*i.e.*, Adam Henderson, Norman Reed, and Margaret Slemmer) must have approved it. If someone at the Company knew of a problem, Plaintiffs presume the Outside Directors must have known it, too. But bare assertions about what the Board "would have" reviewed, approved, or known cannot replace well-pleaded facts about what these individuals actually did or knew.

The problem begins with the AC. It attributes the design of Linqto's ownership structure to Sarris, not the Outside Directors. It describes the delivery of the Legal Memos to Sarris, not the Outside Directors. And when it names the defendants "intimately involved" in preparing and disseminating Linqto's statements, it names five other individuals, not the Outside Directors. Tellingly, in attempting to avoid dismissal, the Opposition fails to identify a single statement or act by the Outside Directors pleaded in the AC, defaulting instead to their status as Board members.

Every claim lacks this same factual predicate. As to their fraud claims, Plaintiffs never allege that any specific Outside Director had ultimate authority over any challenged statement, committed a single deceptive act, or acted with scienter, nor do they plead loss causation. And the remaining claims merely recast the Outside Directors as control persons, statutory sellers, or participants in unlawful practices without pleading the facts those labels require.

Plaintiffs seek to impose liability on anyone who held a Board seat during the Class Period, regardless of what they did or knew. That is not the law. The AC's claims against the Outside Directors should be dismissed with prejudice.

## ARGUMENT

### I. THE SECTION 10(b) CLAIMS FAIL AS TO THE OUTSIDE DIRECTORS (COUNTS I–II)

Plaintiffs seek to hold the Outside Directors liable for Linqto's alleged fraud based on their Board roles and presumed involvement in the Company's affairs. Opp'n at 7-17.[1] But the AC does not allege that any Outside Director made a challenged statement, committed a deceptive act, or acted with scienter, and it does not plead loss causation.

#### A. The AC Identifies No Statements Made By Any Outside Director

Plaintiffs invoke group pleading in an attempt to attribute Linqto's statements to every member of its Board. Opp'n at 8-10. But neither *Janus* nor Plaintiffs' authorities permit liability based on Board service alone.

Under *Janus Capital Group v. First Derivative Traders*, 564 U.S. 135, 131 S. Ct. 2296 (2011), a misstatement claim may be asserted only against the person with "ultimate authority over the statement, including its content and whether and how to communicate it." 564 U.S. at 142, 131 S. Ct. at 2302. Plaintiffs attempt to satisfy that requirement with a single conclusory allegation that every Board member had "the power and authority to control the contents" of Linqto's statements, ¶ 32; Opp'n at 10, but bare recitation of the legal standard is no substitute for facts showing that any Outside Director had such authority. *See Xu v. Gridsum Holding Inc.*, 624 F. Supp. 3d 352, 360 (S.D.N.Y. 2022) ("conclusory allegation" that defendants, by virtue of their "positions," must have "participated" in statement's "preparation" and "controlled its content" does "not pass muster

---

[1] "¶" refers to paragraphs of the Amended Complaint ("AC"). The "Consolidated Reply" refers to the Reply Memorandum of Law in Support of the Moving Defendants' Consolidated Motion to Dismiss the First Amended Complaint; the Outside Directors join in the legal arguments set forth in the Consolidated Reply, to the extent applicable to them in their capacity as outside directors of Linqto, and incorporate them by reference herein. Capitalized terms not defined herein have the same meaning as in the AC. Unless otherwise noted, all emphasis is added, and all internal citations, quotation marks, and alterations are omitted.

under Rule 8," "[m]uch less" Rule 9(b)); *see also In re Weight Watchers Int'l Sec. Litig.*, 504 F. Supp. 3d 224, 262 (S.D.N.Y. 2020) ("conclusory allegations" insufficient to plead control).

Unable to identify any allegations satisfying *Janus*, Plaintiffs fall back on the pre-*Janus* group pleading doctrine, but several courts in this Circuit have held that group pleading did not survive *Janus*.[2] That conclusion naturally follows from *Janus*'s own distinction between participating in a statement's preparation and possessing ultimate authority over it. Providing "management and administrative services," "participating in the writing and dissemination" of a statement, being "significantly involved in preparing" it, or "suggest[ing] what to say" does not itself make a defendant the statement's maker. 564 U.S. at 138, 141, 142, 148, 131 S. Ct. at 2299, 2301, 2302, 2305.

But this Court need not reach the doctrine's continued viability because the AC fails either way. Group pleading was always "extremely limited in scope" to "individuals with direct involvement in the everyday business of the company," and "outside directors are almost by definition excluded from the day-to-day management of a corporation." *In re ShengdaTech, Inc. Sec. Litig.*, No. 11 Civ. 1918, 2014 WL 3928606, at *9-10 (S.D.N.Y. Aug. 12, 2014). Applying the doctrine to outside directors thus requires facts showing that they acted as corporate insiders—*e.g.*, by "exceed[ing] those roles and bec[oming] involved in the everyday business of" the company. *Id.* at *10. The AC pleads no such facts. Indeed, it omits the Outside Directors when it alleges who was "intimately involved in preparing, reviewing, approving, and/or disseminating" Linqto's statements—tacitly conceding the point. *See* ¶ 176.

[2] *See, e.g.*, *Orbis Glob. Equity Le Fund (Austl. Registered) v. Vale S.A.*, No. 21 Civ. 6590, 2026 WL 670157, at *7 (E.D.N.Y. Mar. 10, 2026) ("[A] theory of liability premised on treating corporate insiders as a group cannot survive a plain reading of the *Janus* decision."); *Gridsum Holding*, 624 F. Supp. 3d at 364-65; *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 640-41 (S.D.N.Y. 2017); *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225, 2012 WL 4471265, at *10 (S.D.N.Y. Sep. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014); *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 263 (S.D.N.Y. 2011).

The Opposition's examples of the Outside Directors' day-to-day involvement in Linqto's operations describe only routine Board activity and oversight, Opp'n at 9-10, which does not suffice. Its list of the Board's role in the proposed business combination, regulatory review, audit, and termination payment rests not on allegations about what actions the Board took but on speculation about what the Board "would have" reviewed or approved. *Id.* None establishes any Outside Director's participation in daily operations or authority over a challenged statement.

Plaintiffs' own authorities confirm that generic assertions of control and access untethered to any defendant's actual conduct do not suffice. *Id.* at 8, 10. In *In re Cannavest Corp. Securities Litigation*, 307 F. Supp. 3d 222, 242 (S.D.N.Y. 2018), the court rejected an allegation that an outside director "did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the . . . statements." *See also Levy v. Maggiore*, 48 F. Supp. 3d 428, 451-52 (E.D.N.Y. 2014) (rejecting conclusory allegations of participation in preparing statements and access to internal reports); *ShengdaTech*, 2014 WL 3928606, at *7, *10 (rejecting group pleading despite audit committee service, routine meetings with auditors and management, and "extensive knowledge" of the company).[3] By contrast, the complaint in *In re Philip Services Corp. Securities Litigation*, 383 F. Supp. 2d 463, 480-83 (S.D.N.Y. 2004), Plaintiffs' lead authority, expressly alleged that the directors participated in a meeting at which improperly recorded earnings were discussed, then signed the challenged registration statement. The AC makes no comparable allegations here. In any event, *Philip* concerned group pleading in connection with Section 11, which does not limit liability to a statement's maker. *Id.* at 483.

[3] Plaintiffs incorrectly describe *ShengdaTech* as involving "no allegations of access to insider information," Opp'n at 10 n.8, when the complaint there expressly alleged such access, *see* 2014 WL 3928606, at *4.

### B. The AC Identifies No Deceptive Act By Any Outside Director

Plaintiffs ask this Court to infer the Outside Directors' participation in the alleged scheme from assertions that Linqto's ownership structure "would have required Board approval and oversight," and that the Board "is charged with" ensuring regulatory compliance. Opp'n at 7. Neither assertion identifies any deceptive act by any Outside Director, as required to plead scheme liability. *See In re Glob. Cord Blood Corp. Sec. Litig.*, 820 F. Supp. 3d 221, 258 (S.D.N.Y. 2026). And contrary to the Opposition's characterization, the AC attributes Linqto's ownership structure's design to Sarris and the entities' creation to Linqto, without describing any Outside Director's role in forming the entities or failing to register. *See* ¶ 57.

And, in any event, such conclusory assertions about the Board's supposed role cannot establish scheme liability. Opp'n at 8 n.7. *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11 Civ. 4209, 2013 WL 1223844, at *14 (S.D.N.Y. Mar. 27, 2013), rejected scheme liability because general board-monitoring allegations did not show that the board "played any real role in the scheme itself." *In re Marsh & McLennan Securities Litigation* required "particularized allegations" of "active participation in a scheme." 501 F. Supp. 2d 452, 491 (S.D.N.Y. 2006). Even actual Board approval of a transaction alleged to be part of a scheme does not suffice without facts showing deception. *See Glob. Cord Blood*, 820 F. Supp. 3d at 258 (rejecting scheme claims against directors who voted for the challenged transaction).

The cases Plaintiffs rely on require participation in deceptive conduct. Opp'n at 7-8. In *SEC v. Sugarman*, No. 19 Civ. 5998, 2020 WL 5819848, at *9 (S.D.N.Y. Sep. 30, 2020), the defendant allegedly directed the creation of a sham entity and concealed the source of funds. And in *In re Zeta Global Holdings Corp. Securities Litigation*, 838 F. Supp. 3d 413, 435 (S.D.N.Y. 2026), the CEO allegedly transferred stock to affiliates he controlled to facilitate sales while

avoiding reporting requirements. Having alleged no deceptive conduct by the Outside Directors, Plaintiffs' scheme liability claim fails.

### C. The AC Fails To Plead A Strong Inference Of Scienter As To Any Outside Director

Because Plaintiffs do not allege a motive, they must offer "correspondingly greater" circumstantial allegations of conscious misbehavior or recklessness. *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). But far from pleading such allegations, Plaintiffs simply assume that any information known within Linqto must also have been known to the Outside Directors. Opp'n at 11-17. It is not enough, however, to allege that a defendant "merely ought to have known." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 574 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015).

The AC describes the Legal Memos' delivery to Sarris, then asserts without supporting detail that those Memos "informed Individual Defendants." ¶¶ 95, 104, 136, 147-148. But nothing in that account, or in the Opposition, explains how or when the analysis in the Legal Memos reached any Outside Director. "[B]oilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership . . . are insufficient to plead scienter." *Saskatchewan Healthcare Emp. Pension Plan v. KE Holdings*, 718 F. Supp. 3d 344, 389 (S.D.N.Y. 2024); *see also In re Gildan Activewear Sec. Litig.*, 636 F. Supp. 2d 261, 272-73 (S.D.N.Y. 2009).[4]

Plaintiffs also infer knowledge from the Board's review of a proposed business combination. Specifically, the Opposition asserts that all three Outside Directors "would have" received reports and reviewed the 2023 Memo. Opp'n at 12. And the AC reasons that, because

[4] The AC attributes its account of the 2023 Memo to a Board observer but notably nowhere alleges that the observer saw the memo or otherwise understood that the memo was provided to the full Board. ¶¶ 69, 95.

operational review and Board approval are "typically required" for such transactions, Defendants were "likely made aware" of Linqto's noncompliance. ¶ 149. But this daisy chain of inferences does not satisfy Rule 9(b) or the PSLRA, and the AC describes no Board materials, meeting, or discussion conveying the memo's warnings to any Outside Director. This is much like *In re Satyam Computer Services Ltd. Securities Litigation*, 915 F. Supp. 2d 450, 478, 480 (S.D.N.Y. 2013), where the existence of letters addressed to the company did not establish that their contents reached its outside directors. Plaintiffs' attempt at distinction, that the Legal Memos here reached these directors, simply assumes a conclusion for which they provide no support. Opp'n at 13 n.9.[5]

The account of FE-2 (a marketing and brand manager) and the AC's description of Jiang's affidavit do not establish what any Outside Director knew. FE-2 described markups as "fairly well known in the Company," without explaining how that knowledge reached anyone outside the Company, including the Outside Directors. ¶ 139. Nowhere is FE-2 alleged to have any personal knowledge of any meeting or other transmission of any such information to the Outside Directors. *See Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 589-90 (S.D.N.Y. 2011) ("[E]ven confidential high level executives' statements will be insufficient absent some allegation that the witness communicated with the individual defendants claimed against in the case, or else that the witness was privy to the individual defendants' knowledge."). And the assertion that Jiang and the other Individual Defendants had regulatory issues they "needed to resolve" does not explain what information any Outside Director had at the time of the challenged conduct or how it revealed the alleged fraud. ¶ 117.[6]

---

[5] *Gruber v. Gilbertson*, No. 16 Civ. 9727, 2018 WL 1418188, at *12 (S.D.N.Y. Mar. 20, 2018), involved specific Board conduct supporting the alleged stock-manipulation scheme. And *In re Complete Management Securities Litigation*, 153 F. Supp. 2d 314, 325-26 (S.D.N.Y. 2001), relied on detailed allegations concerning the defendants' managerial roles and interactions with the client whose practices generated the fraudulent receivables.

[6] Despite Plaintiffs' characterizations, the Outside Directors do not argue that Plaintiffs must allege personal conversations with each director or hand-delivery of the memos. Opp'n at 12-13. They must, however, provide a

Likewise, the alleged instruction in November 2024 from the Board to Sarris to stop marketing does not establish what any Outside Director knew about the alleged fraud. According to FE-1, an unidentified email marketing manager relayed that Sarris said the Board told him "to stop marketing because they were getting sued." ¶ 150. This hearsay-upon-hearsay account is "inherently not derived from [FE-1's] 'personal knowledge' as required." *Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 222 (S.D.N.Y. 2018), *aff'd sub nom. Kapitalforeningen Lægernes Inv. v. United Techs. Corp.*, 779 F. App'x 69 (2d Cir. 2019). Even if somehow attributable to each Outside Director, that report does not describe the supposed lawsuit against the directors, the information conveyed to them, or what they learned about any challenged statement or practice. Such an instruction, if given, would not establish the Outside Directors' scienter as to earlier statements either. *See Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (no scienter based on "fraud by hindsight").[7] And, if anything, an instruction to "stop marketing" supports an inference that the Board learned of a problem at that time and addressed it, *see Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010), not that it knowingly participated in a scheme to conceal adverse facts.

Nor does the alleged scale of the fraud establish the Outside Directors' scienter. Opp'n at 13-15. As this Court has explained, "the size of the fraud alone does not create an inference of scienter." *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 447 (S.D.N.Y. 2005) (Kaplan, J.). That is especially true where, as here, the defendants' involvement in daily operations is not alleged. *See*

factual basis for inferring a particular defendant's knowledge—which they do not. *See Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 615-16 (S.D.N.Y. 2015) (considering witnesses' positions and involvement in the challenged practices); *In re Avon Sec. Litig.*, No. 19 Civ. 01420, 2019 WL 6115349, at *21 (S.D.N.Y. Nov. 18, 2019).

[7] The later Company statements alleged in ¶ 79 do not fill that gap—the AC pleads no particularized facts showing that any Outside Director made those statements, *see supra* Part I.A, or knew of or recklessly disregarded their falsity.

*In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 220-21 (S.D.N.Y. 1999) (rejecting magnitude-based scienter allegations against audit committee members); *Satyam*, 915 F. Supp. 2d at 479.[8]

As for the core operations doctrine, it provides, at most, "supplemental support" for other sufficiently pleaded allegations of scienter. *In re Farfetch Ltd. Sec. Litig.*, No. 23 Civ. 10982, 2026 WL 2925885, at *17 (S.D.N.Y. Sep. 29, 2026). It cannot cure the absence of facts connecting these Outside Directors to the alleged fraud. *See In re Atlas Air Worldwide Holdings Sec. Litig.*, 324 F. Supp. 2d 474, 497 (S.D.N.Y. 2004) ("less reasonable to impute knowledge" to an outside chairman uninvolved in daily operations, absent allegations that he received information alerting him to the false statement).[9]

Finally, the AC's general oversight allegations do not show conscious misbehavior or recklessness. Plaintiffs cite duties to comply with registration laws, disclose adverse information, and supervise executives. Opp'n at 15-16. But scienter is not established merely because defendants "had access to . . . information and a duty to monitor." *Pitman v. Immunovant Inc.*, No. 21 Civ. 918, 2024 WL 964258, at *20 (E.D.N.Y. Feb. 25, 2024); *see also Satyam*, 915 F. Supp. 2d at 479. Nor does declaring an "egregious refusal to see the obvious" eliminate the need for particularized facts showing a danger that was known to the defendant or so obvious that the defendant must have been aware of it. *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 40 (2d Cir. 2000). The AC's speculation about what additional oversight would have uncovered describes, at most, what directors "might have learned if they had done a better job." *In re WorldCom Sec.*

---

[8] *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 939 (9th Cir. 2003), involved substantial allegations of suspicious stock sales supporting scienter as to outside directors. The AC pleads no comparable stock sales; Plaintiffs do not allege a motive at all in the AC or their Opposition.

[9] Plaintiffs rely on *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989), which predates the PSLRA, and *Altshares Event-Driven ETF v. Endeavor Group Holdings*, No. 26 Civ. 00526, 2026 WL 1848123, at *6 (C.D. Cal. June 23, 2026), which applied Ninth Circuit law. Neither displaces the limitation recognized in *Farfetch*, 2026 WL 2925885, at *17.

*Litig.*, No. 02 Civ. 3288, 2003 WL 23174761, at *5 (S.D.N.Y. Dec. 3, 2003).[10]

* * *

Taken together, the AC's allegations do not create a strong inference of scienter. Plaintiffs describe warnings delivered to others, information circulating within the Company, and matters that ordinarily receive Board review, but no particularized facts showing that any Outside Director knew of or recklessly disregarded the alleged fraud. The most compelling inference is a belated discovery of alleged misconduct rather than a years-long scheme to conceal it. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 323-24, 127 S. Ct. 2499, 2509-10 (2007); *Slayton*, 604 F.3d at 776-77.

**D. The AC Fails To Adequately Plead Loss Causation**

The PSLRA requires Plaintiffs to plead "that the act or omission *of the defendant* . . . caused the loss." 15 U.S.C. § 78u-4(b)(4). As discussed, *supra* Parts I.A-I.B, however, neither the AC nor the Opposition identifies any such act or omission by any Outside Director, Opp'n at 18-21, so Plaintiffs fail to plead loss causation for that threshold reason. In any case, pleading loss causation requires Plaintiffs to identify a corrective disclosure that revealed the falsity of an earlier statement or the materialization of a concealed risk. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174-75 (2d Cir. 2005). They do neither, which "is fatal under Second Circuit precedent." *Id.* at 175.

*First*, Plaintiffs' suggestion that they are excused from pleading a corrective disclosure because they bought Series interests at "artificially inflated" prices, ¶¶ 125-26, does not suffice. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342, 125 S. Ct. 1627, 1631 (2005) ("[A]n inflated

[10] The cases Plaintiffs rely on are inapposite. *Employees' Retirement System of Government of the Virgin Islands v. Blanford*, 794 F.3d 297, 306-09 (2d Cir. 2015), involved specific internal warnings and substantial insider stock sales. And *Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 196 (2d Cir. 2008), rejected reliance on monitoring duties without sufficiently identifying information that a reasonable investigation would have uncovered.

purchase price will not itself constitute or proximately cause the relevant economic loss."); *accord In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009); *see also Lentell*, 396 F.3d at 174 (purchase-time value disparity "does not speak to the relationship between the fraud and the loss of the investment"). Plaintiffs' contention that their "overpayment is the *direct result* of undisclosed markups," Opp'n at 19, simply restates that theory, and their lone authority, *Marini v. Adamo*, 995 F. Supp. 2d 155 (E.D.N.Y. 2014), does not help. It involved a dealer who himself sold the securities and charged the markups in a market with ascertainable prices, *id.* at 165; it cites *Dura* but fails to apply it, *see id.* at 195-97;[11] and it says nothing about outside directors not plausibly alleged to have set, approved, or even known any price.

*Second*, Plaintiffs did not plead a materialization-of-risk theory, ¶¶ 125–28, and cannot amend through their opposition, *see George v. China Auto. Sys., Inc.*, No. 11 Civ. 7533, 2012 WL 3205062, at *14 (S.D.N.Y. Aug. 8, 2012), so it is waived. The theory that the freeze, shutdown, and bankruptcy were the "foreseeable materialization" of concealed risks, Opp'n at 19, regardless fails. Plaintiffs nowhere plead that price "fell significantly after the truth became known," as they must. *Dura*, 544 U.S. at 347, 125 S. Ct. at 1634. Nor does alleged temporary loss of access to investments show "actual economic loss," as *Dura* requires, *id.* at 344, 1632, much less one caused by the directors. Finally, as for the Ripple tender offer, Plaintiffs concede "the absence of allegations tying" the Outside Directors to that transaction. Opp'n at 20.

## II. NO OUTSIDE DIRECTOR IS A CONTROL PERSON (COUNT III)

Plaintiffs lean on the AC's collective assertion that all Control Person Defendants

[11] *Marini* primarily relied on language from *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001). *See Marini*, 995 F. Supp. 2d at 196. But the Second Circuit later clarified that it "did not mean to suggest in *Suez Equity* that a purchase-time loss allegation *alone* could satisfy the loss causation pleading requirement." *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 198 (2d Cir. 2003).

"participated in the day-to-day operation and management of Linqto." ¶ 176; Opp'n at 21-22. But beyond this formulaic statement, the AC offers no facts showing that any Outside Director controlled the conduct at issue.

Plaintiffs' authorities involved defendants with concrete authority over the challenged statements or transactions. *See zCap Equity Fund LLC v. LuxUrban Hotels*, 792 F. Supp. 3d 407, 447 (S.D.N.Y. 2025) (executives controlling operations and filings); *In re Alibaba Grp. Holding Sec. Litig.*, No. 20 Civ. 9568, 2023 WL 2601472, at *15 (S.D.N.Y. Mar. 22, 2023) (CEO and CFO who signed relevant filings); *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 829-30 (S.D.N.Y. 2006) (employer and principal's control over an agent). Contrast those with *Batwin v. Occam Networks, Inc.*, No. 07 Civ. 2750, 2008 WL 2676364, at *25 (C.D. Cal. July 1, 2008), which rejected claims against directors whose Board and audit-committee service did not establish involvement in the company's daily affairs. That control can present a "factual question" does not excuse the absence of supporting allegations. Opp'n at 22. The AC also fails to plead culpable participation for the reasons explained in Part I.[12]

## III. NO OUTSIDE DIRECTOR IS A STATUTORY SELLER (COUNT IV)

Plaintiffs contend that the Outside Directors "ran an illegal marketing scheme directing Linqto to send targeted solicitations to investors." Opp'n at 17-18. But their cross-reference to the Opposition's scienter discussion points to no facts showing that any Outside Director solicited a purchase or directed Linqto to do so. Plaintiffs thus fail to distinguish *Yi Xiang v. Inovalon Holdings, Inc.*, 254 F. Supp. 3d 635, 645-46 (S.D.N.Y. 2017) (officer or director status and signing

[12] *In re Quintel Entertainment Inc. Securities Litigation*, 72 F. Supp. 2d 283, 298 & n.6 (S.D.N.Y. 1999), placed the burden of proving good faith and lack of participation on defendants; Plaintiffs concede that they must plead culpable participation here. Opp'n at 21. *Batwin* also applied a standard that did not require pleading culpable participation. 2008 WL 2676364, at *24. Nor does describing the Board as "charged with" registration, IPO negotiations, and an audit, Opp'n at 22 n.11, distinguish *In re Smith Barney Transfer Agent Litigation*, 884 F. Supp. 2d 152, 166-67 (S.D.N.Y. 2012), which requires facts showing actual control over the matters at issue.

a registration statement insufficient), or *Mabon, Nugent & Co. v. Borey*, 127 B.R. 727, 735 (S.D.N.Y. 1991) (board authorization of securities sales insufficient).

Plaintiffs' own authorities confirm the point. In *Balestra*, the complaint "contain[ed] several references to the personal involvement of [the defendants] in publicizing" the offering. *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 358 (S.D.N.Y. 2019). And in *Tecumseh Holdings*, the defendant personally "drafted or reviewed offering memoranda" and "authorized the distribution of these memoranda to prospective investors." *See SEC v. Tecumseh Holdings Corp.*, No. 03 Civ. 5490, 2009 WL 4975263, at *3 (S.D.N.Y. Dec. 22, 2009). Plaintiffs make no such personalized allegations against the Outside Directors, and their Board membership is insufficient to make them statutory sellers.[13]

## IV. PLAINTIFFS' STATE LAW CLAIMS ARE DEFICIENT (COUNTS VI-VII)

### A. Plaintiffs Fail To State A Claim Under The Texas Securities Act

Even under Plaintiffs' broad definition of a "seller," the AC must plead facts showing how each Outside Director participated in the selling process. Plaintiffs' assertion that *Billitteri v. Securities America, Inc.*, 2010 WL 6785484 (N.D. Tex. July 26, 2010), "failed to follow" Texas law does not answer that defect. Opp'n at 22-23. *Billitteri* rejected collective allegations of participation because "Rule 9(b) requires Plaintiffs to identify the facts underlying each [defendant's] involvement." 2010 WL 6785484, at *7. The AC offers the same kind of collective assertions without explaining any Outside Director's role. ¶¶ 177, 182, 195.

Plaintiffs' own Texas authority confirms that corporate status does not establish participation in a sale. In *Slack v. Shreve*, No. 24 Civ. 00014, 2024 WL 4644610 (Tex. App. Oct.

[13] Plaintiffs inexplicably attempt to distinguish a case that Henderson and Reed did not cite, *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 429 (S.D.N.Y. 2000), and misstate the procedural posture.

31, 2024), the court recognized the TSA's broad reach but explained, in affirming summary judgment, that the defendant's status as the company's CFO did not, without more, establish his connection to the sale. Board membership is even further attenuated. Plaintiffs' fraud-based theory must satisfy Rule 9(b)'s requirement of particularized allegations of each Outside Director's involvement. *See Billitteri*, 2010 WL 6785484, at *4-5 (citing *Dorsey v. Portfolio Equities*, 540 F.3d 333, 344 (5th Cir. 2008)). And Plaintiffs' control-person theory under Section 4008.055 fails because the AC does not plead that any Outside Director controlled a seller, buyer, or issuer. *Supra* Part II.

### B. Plaintiffs Fail To State A Claim Under The California Unfair Competition Law

Plaintiffs argue that the Outside Directors controlled or knowingly permitted Linqto's unlawful and unfair practices. Opp'n at 23-24. But the AC does not describe the personal involvement the UCL requires.

Plaintiffs cannot distinguish Defendants' cases that dismissed UCL claims for lack of personal involvement. Contrary to the Opposition's characterization, Opp'n at 23, *In re JUUL Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, 497 F. Supp. 3d 552, 635-36 (N.D. Cal. 2020), expressly applied its earlier RICO analysis to the UCL claims. The "blanket assertion" that the Board had "final say" over marketing materials did "not establish the requisite individual 'direction or control' to pin liability . . . on each member of the Board." *Id.* at 635. And *O'Connor* required officers and directors to "participate in the wrong or authorize or direct that it be done" and dismissed the UCL claims for insufficient allegations of personal involvement. *O'Connor v. Uber Techs., Inc.*, No. 13 Civ. 3826, 2013 WL 6354534, at *17-18 (N.D. Cal. Dec. 5, 2013).

The allegations Plaintiffs cite do not show that any Outside Director participated in or

knowingly permitted the challenged practices. Their assertions of "authority," "access," and "control" rest on corporate positions and assumptions, not alleged facts showing personal involvement. ¶¶ 32, 73, 129. The AC's account of pricing and commissions describes no role for any Outside Director. ¶¶ 131-132. The assertion that these directors knowingly allowed misconduct to continue depends on the same unsupported claims that legal warnings reached them. Opp'n at 24; *supra* Part I.C. And Plaintiffs' "unlawful" theory repackages the deficient federal securities claims discussed above. ¶¶ 206-208; *supra* Parts I, III.[14]

Finally, Plaintiffs cannot escape the fact that the California UCL "does not apply to securities transactions" by recasting their allegations. *See Bowen v. Ziasun Techs., Inc.*, 11 Cal. Rptr. 3d 522, 530-31 (Cal. Ct. App.), *as modified on denial of reh'g* (Apr. 7, 2004). Although the bar does not reach claims only "tangentially related" to securities transactions, *Betz v. Trainer Wortham & Co., Inc.*, 829 F. Supp. 2d 860, 866 (N.D. Cal. 2011), the AC is, by Plaintiffs' own description, a "securities class action," ¶ 1. And the "distinct" conduct Plaintiffs now invoke, Opp'n at 23, is not pled in ¶ 207, and is not distinct from their underlying allegations.

## CONCLUSION

Plaintiffs' request for leave to amend does not explain how another complaint would cure these defects. They refer generally to newly discovered details about Board committees and awareness of regulatory violations, but are tellingly silent on how those details would establish any Outside Director's liability. Opp'n at 24 n.12. The AC should therefore be dismissed with prejudice as to the Outside Directors.

[14] Plaintiffs withdrew their Investment Company Act claim (Count V). *See* Consol. Opp'n at 1 n.2.

Dated: November 5, 2026

**COOLEY LLP**

By: */s/ Brian M. French*

Brian M. French
Nicholas Caselli
Brian Golger
Hugh Hamilton
55 Hudson Yards
New York, NY 10001-2163
Tel: (212) 479-6000
Fax: (212) 479-6275
bfrench@cooley.com
ncaselli@cooley.com
bgolger@cooley.com
hhamilton@cooley.com

*Attorneys for Defendant Margaret Slemmer*

By: */s/ Jenna M. Dabbs*

Jenna M. Dabbs
Kate L. Doniger
Benjamin S. Spiegel
Jacob Steiner
HECKER FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883

*Attorneys for Defendants Adam T. Henderson and Norman Reed*